**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re: Case 3:15-bk-03677-PMG Chapter 11

STONEWALL FARM OCALA, LLC,

Debtor.
_______________________________________/

# DEBTOR STONEWALL FARM OCALA, LLC'S DISCLOSURE STATEMENT REGARDING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF RICHARD HAISFIELD AND AUDREY L. HAISFIELD, AND STONEWALL FARM OCALA, LLC[1]

ROBERT D. WILCOX, ESQ.
WILCOX LAW FIRM
814 A1A NORTH, SUITE W-15
PONTE VEDRA BEACH, FL 32082
(904) 405-1250

ATTORNEYS FOR STONEWALL FARM OCALA, LLC

[1] The Joint Plan to which this Disclosure Statement relates was filed on March 9, 2017 as Docket No. 394 in the jointly administered Chapter 11 bankruptcy case of *In re: Richard Haisfield and Audrey Haisfield*, Case No. 3:11-bk-08765-PMG, Middle District of Florida, Jacksonville Division.

## I. INTRODUCTION AND SUMMARY

This Disclosure Statement is filed pursuant to the requirements of Section 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-referenced bankruptcy case (the "Bankruptcy Case") to make informed judgments about the *First Amended Joint Chapter 11 Plan Of Liquidation Of Richard Haisfield And Audrey L. Haisfield, And Stonewall Farm Ocala, LLC* (the "Plan") submitted by Stonewall Farm Ocala, LLC ("SWF Ocala Debtor") and Richard Haisfield and Audrey L. Haisfield (the "Haisfields" or the "Haisfield Debtors") (SWF Ocala Debtor collectively with the Haisfields, the "Debtors") and attached hereto as Exhibit 1. The overall purpose of the Plan is to restructure the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders. The Debtors believe the Plan is reasonably calculated to lead to the best possible outcome for all creditors in the shortest amount of time and preferable to all other alternatives.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES, AND ASSUMPTIONS.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS**.

SWF Ocala Debtor is the debtor under Chapter 11 of the Code in a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court"). Hereinafter the case is at times referred to as the "SWF Ocala Bankruptcy Case".

SWF Ocala Debtor owns a horse farm located at 800 SW 85th Avenue, Ocala, Florida 34481 in Ocala, Florida (the "Ocala Farm"). The SWF Ocala Debtor owns the real property and improvements located at that address. Richard Haisfield is the owner of a 75% interest in SWF Ocala Debtor. He has received no salary, but he and his wife reside at a home on the premises. As

of the date SWF Ocala Debtor filed the SWF Ocala Bankruptcy Case, Marc Haisfield was the owner of a 25% interest in SWF Ocala Debtor.

The Debtors' Plan is a liquidating Plan pursuant to which substantially all of the Haisfield Debtors' assets and the net liquidation proceeds of the Ocala Farm and all other assets of the SWF Ocala Debtor's Estate which are not otherwise administered, are to be transferred to a Haisfield Creditors Trust which will liquidate the assets and prosecute or resolve all Litigation Claims held by the Debtors. All resulting funds will be distributed to certain holders of Allowed Claims as against the Haisfield Debtors as set forth herein, whose claims against the Haisfield Debtors will be exchanged for a Pro Rata beneficial interest in the Haisfield Creditors Trust.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired" and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan (the "Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is __________, 2017. All votes must be received by the Clerk of the United States Bankruptcy Court for the Middle District of Florida, 300 N. Hogan St., Suite 3-350, Jacksonville, FL 32202 by 5:00 p.m. (EST) on that day.

Upon receipt, the Ballots will be tabulated and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Section IV of this

Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing (the "Confirmation Hearing") to consider whether the Debtors have complied with those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in Section IV of this Disclosure Statement, the Debtors have expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

## II. DESCRIPTION OF DEBTORS' BUSINESS

### A. In General.

SWF Ocala Debtor is majority-owned by Richard Haisfield, and at all times during the course of this case, controlled by him. The Haisfields are married individuals who reside at 800 the Ocala Farm. Richard Haisfield assists in managerial duties at the Ocala Farm and, in return, the Ocala Farm continues to provide for certain living expenses of the Haisfields, including housing, transportation and utilities.

### A. Events Leading to Chapter 11 Filing

SWF Ocala Debtor filed this case on August 17, 2015 after Carl Bowling and Joan Bowling filed and prosedcuted a complaint in the lawsuit styled as "Carl Bowling and Joan Bowling, Husband and Wife vs. Stonewall Farm Ocala, LLC , a Florida Limited Liability Company; Peter Van Rosebeck; Karen A. Rosebeck; and Sabadell United Bank, N.A.". In that lawsuit, Carl Bowling and Joan Bowling (the "Bowlings")sought (a) to foreclose on the Ocala Farm, (b) assert lien interests under a Purchase Money Mortgage, and (c) obtain a money judgment based on the Bowlings' claim that SWF Ocala Debtor, and certain guarantors, owed the Bowlings at least

$1,963,314.72 based on a Note and a Purchase Money Mortgage.

SWF Ocala Debtor filed this case to protect the value of the Ocala Farm and SWF Ocala debtor's personal property, and as part of a larger negotiation between the Haisfields and the Official Committee of Unsecured Creditors in their Chapter 11 case, *In re: Richard Haisfield and Audrey Haisfield*, Case No. 3:11-bk-08765-PMG, Middle District of Florida, Jacksonville Division (the "Haisfield Case").

B. Events Subsequent to Chapter 11 Filing.

Since the Petition Date, the SWF Ocala Debtor have been continuing to manage their affairs as debtors-in-possession under Sections 1101(a) and 1108 of the Code. On September 15, 2015, the ourt entered an order authorizing the Debtor to employ Robert D. Wilcox and Wilcox Law Firm as counsel for the Debtors. Robert D. Wilcox and Wilcox Law Firm had served, and continue to serve, as Special Counsel to the Haisfields, and certain entities they own or control, in Adversary Proceeding Number 3:13-ap-00065-PMG pending in the Haisfield Case.

On March 10, 2016, the Bowlings filed their *Motion for Relief from Stay* (Doc. No. 30). After extensive negotiation between SWF Ocala Debtor and the Bowlings, conducted through counsel, the Bowlings withdrew the motion seeking stay relief.

Since that time SWF Ocala Debtor has been involved actively in negotiations among (a) SWF Ocala Debtor, (b) Haisfields, and (c) the Official Committee of Unsecured Creditors in the Haisfield Case. The Plan is the result of those extensive negotiations.

## III. THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY**

**BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A. Stonewall Farm Ocala Bankruptcy Case.

1. Separate Administration.

The SWF Ocala Bankruptcy Case will not be substantively consolidated with the Haisfield Bankruptcy Case, but will be separately administered by the Liquidating Agent. Although these Chapter 11 Cases will be separately administered, they will proceed on parallel paths. The sole asset that will be administered in the SWF Ocala Bankruptcy Case is the Ocala Farm. The Ocala Farm will be liquidated and the net sale proceeds will be paid to the Allowed Claims of the Creditors of the SWF Ocala Debtor in the SWF Ocala Bankruptcy Case as provided herein. The Ocala Farm Remaining Proceeds will be contributed to the Haisfield Creditors Trust for administration by the Haisfield Creditors Trustee in the Haisfield Bankruptcy Case. All other Assets of the SWF Ocala Debtor's Estate will be contributed to the Haisfield Creditors Trust in satisfaction of the Committee's general unsecured claim against the SWF Ocala Debtor's Estate except those Assets identified on Exhibit "C" to the Plan which shall be conveyed and contributed to the Debtors for their operation of the Debtors' Horse Breeding Business.

2. Classification and Treatment of Classified Claims and Interests**.**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the SWF Ocala Bankruptcy Case. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as

otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as set forth in Article 2 above.

a. Classification. 1. Class SWF-1.The Allowed Secured Claim of Carl and Joan Bowling.

The Class SWF-1 Claim is secured by a first priority mortgage lien against the Ocala Farm.

2. Class SWF-2. The Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck.

The Class SWF-2 Claim is secured by a second priority mortgage lien against the Ocala Farm.

3. Class SWF-3.

The Allowed Claims of General Unsecured Creditors of the SWF Ocala Debtor.

4. Class SWF-4.

The Allowed Claim of the Committee against the SWF Ocala Debtor.

5. Class SWF-5.The Allowed Unsecured Claim of Stonewall Phoenix, LLC.

6. Class SWF-6The equity Interests in the SWF Ocala Debtor.

B Identification of Classes of Claims and Interests Impaired and Not Impaired.

1. Unimpaired Classes of Claims and Interests. No classes of Claims or Interests are Unimpaired under the Plan.

2. Impaired Classes of Claims and Interests. Classes SWF-1, SWF-2, SWF-3, SWF-4, SWF-5, and SWF-6 are Impaired by virtue of Section 1124 of the Bankruptcy Code. Votes from holders of Class SWF-1, Class SWF-2, Class SWF-3, and Class SWF-4 will be solicited. Classes SWF-5 and SWF-6 will receive no distribution under the Plan; therefore, Classes SWF-5 and SWF-6 are conclusively presumed to reject the Plan.

C. Provisions for the Treatment of Impaired Claims and Interests

1. Summary. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Administrative Claims and Priority Claims have not been classified and are excluded from the following Classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. The SWF Ocala Debtor shall receive credit for all payments made on account of Allowed Secured Claims during the pendency of the Chapter 11 Cases.

2. Classification and Treatment. 1.

Class SWF-1 (Allowed Secured Claim of Carl and Joan Bowling).

Class SWF-1 consists of the Allowed Secured Claim of Carl and Joan Bowling. Carl and Joan Bowling shall retain their mortgage lien against the Ocala Farm in its existing priority. The Allowed Secured Class SWF-1 Claim shall accrue interest after the Petition Date at the contract, non-default interest rate as provided in the Class SWF-1 Claim loan documents. In full satisfaction

of the Class SWF-1 Claim, the Class SWF-1 Claim will be paid in full upon the closing of the sale of, and from the net sale proceeds of, the Ocala Farm by the Liquidating Agent.

Class SWF-2 (Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck).

Peter Van Rosbeck and Karen A. Rosbeck shall retain their mortgage lien against the Ocala Farm in its existing priority. The Allowed Secured Class SWF-2 Claim shall accrue interest after the SWF Ocala Petition Date at the contract, non-default interest rate as provided in the Class SWF-2 Claim loan documents. In full satisfaction of the Class SWF-2 Claim, the Class SWF-2 Claim will be paid in full upon the closing of the sale of, and from the net sale proceeds of, the Ocala Farm by the Liquidating Agent, after first the payment in full of the Class SWF-1 Claim.

3. Class SWF-3 (Allowed General Unsecured Claims).

Holders of Allowed Class SWF-3 General Unsecured Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for their Allowed Class SWF-3 General Unsecured Claims, their Pro Rata share on account of their Allowed Class SWF-3 General Unsecured Claims of the net sale proceeds of the Ocala Farm by the Liquidating Agent, after first the payment in full of the Class SWF-1 Claim and Class SWF-2 Claim. Class SWF-3 Claims may be subject to dispute or objection and shall receive no distribution until such objection or dispute is resolved by Final Order.

4. Class SWF-4 (The Allowed Claim of the Committee against the SWF Ocala Debtor).

In full satisfaction of the Class SWF-4 Claim all Assets of the SWF Ocala Debtor's Estate, with the exception of the Ocala Farm and those identified on Exhibit "C" to the Plan shall be contributed to the Haisfield Creditors Trust.

5. Class SWF-5 (The Unsecured Claim of Stonewall Phoenix, LLC). Class SWF-5 consists of the Allowed Unsecured Claim of Stonewall Phoenix, LLC. The holder of the Allowed Class SWF-5 Claim will receive no distribution under the Plan.

6. Class SWF-6 (The Equity Interests in SWF Ocala). Class SWF-6 consists of holders of the equity Interests in the SWF Ocala Debtor. Holders of Class SWF-6 Claims will receive no distribution under the Plan.

D. Reservation of Rights to Object to Claims or Interests.

Neither the Liquidating Agent, the SWF Ocala Debtor, nor the Committee has reviewed the validity or amount of the Claims and Interests for which a Proof of Claim has been filed in the SWF Ocala Bankruptcy Case. Accordingly, except as otherwise set forth herein, all rights to amend the SWF Ocala Debtor's Schedules and to object to such Claims or Interests are reserved by the Liquidating Agent, the SWF Ocala Debtor, and the Committee, notwithstanding the right of the holder of such Claim or Interest to vote on this Plan.

E. Haisfield Bankruptcy Case

1. Separate Administration.

The Haisfield Bankruptcy Case will not be substantively consolidated with the SWF Ocala Bankruptcy Case, but will be separately administered by the Haisfield Creditors Trustee. Although these Chapter 11 Cases will be separately administered, they will proceed on parallel paths. The sole asset that will be administered in the SWF Ocala Bankruptcy Case is the Ocala Farm. The Ocala Farm will be liquidated and the net sale proceeds will be paid to the Allowed Claims of the Creditors of the SWF Ocala Debtor in the SWF Ocala Bankruptcy Case as provided herein. The Ocala Farm Remaining Proceeds will be contributed to the Haisfield Creditors Trust for administration by the Haisfield Creditors Trustee in the Haisfield Bankruptcy Case. All other

Assets of the SWF Ocala Debtor's Estate will be contributed to the Haisfield Creditors Trust in satisfaction of the Committee's general unsecured claim against the SWF Ocala Debtor's Estate except those Assets identified on Exhibit "C" to the Plan which shall be conveyed and contributed to the Debtors for their operation of the Debtors' Horse Breeding Business.

2. Classification and Treatment of Classified Claims and Interests.

a. General. Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the Haisfield Bankruptcy Case. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as set forth in Article 2 above.

b. Classification.1.

Class H-1 (BMW Financial Services).Class H-1 consists of the Allowed Secured Claim of BMW Financial Services which arises from a pre-petition purchase money loan for the purchase of a 2009 BMW X3 Wagon. The Class H-1 Claim is secured by a purchase money, first priority lien on the motor vehicle.

2. Class H-2 (The Greatness Syndicate)Class H-2 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a prepetition purchase money loan for the acquisition of a 75% interest in the stallion "Greatness."

3. Class H-3 (Allowed General Unsecured Claims).Class H-3 shall consist of the Allowed Claims of General Unsecured Creditors of the Haisfield Debtors.

4. Class H-4 (The Haisfield Debtors).Class H-4 shall consist of Richard and Audrey.

F. Identification of Classes of Claims and Interests Impaired and Not Impaired

1. Unimpaired Classes of Claims and Interests. No classes of Claims or Interests are Unimpaired under the Plan.

2. Impaired Classes of Claims and Interests. Classes H-1, H-2, H-3, and H-4 are Impaired by virtue of Section 1124 of the Bankruptcy Code. Votes from holders of Class H-1, Class H-2, Class H-3, and Class H-4 will be solicited.

G. Provisions for the Treatment of Impaired Claims and Interests

1. Summary.The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Administrative Claims and Priority Claims have not been classified and are excluded from the following Classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. The Haisfield Debtors shall receive credit for all payments made on account of Allowed Secured Claims during the pendency of the Chapter 11 Cases.

2. Classification and Treatment.1. Class H-1 (BMW Financial Services).Class H-1 consists of the Allowed Secured Claim of BMW Financial Services which

arises from a pre-petition purchase money loan for the purchase of a 2009 BMW X3 Wagon. The Class H-1 Claim is secured by a purchase money, first priority lien on the motor vehicle. In full satisfaction of BMW's Allowed Secured Claim, BMW shall retain its lien on the motor vehicle and on the first day of the month following the Effective Date, the Haisfield Debtors shall commence monthly payments to BMW on account of the Class H-1 Claim based upon a three (3) year amortization and maturity with interest at a fixed rate of five percent (5%), until the remaining indebtedness thereunder is paid in full. The Haisfield Debtors may prepay the entire Class H-1 Claim at any time without penalty.

2. Class H-2 (The Greatness Syndicate).Class H-2 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a prepetition purchase money loan for the acquisition of a 75% interest in the stallion "Greatness." The Class H-2 Claim is subject to set-off claims of the Haisfield Debtors against The Greatness Syndicate for unpaid expenses related to the maintenance, room and board for the stallion “Greatness.” After applying all set-offs as of the Effective date, the Greatness Syndicate will retain its lien on Greatness for the balance of its allowed claim. Commencing on the first day of the first full calendar quarter following the Effective Date, the Haisfield Debtors will commence payments to the Greatness Syndicate on its allowed claim after set-off based upon a three year amortization and maturity with interest at five percent (5%) per annum. The Haisfield Debtors may set-off from any quarterly payment any current amounts owed by The Greatness Syndicate for the maintenance, room and board for “Greatness.”

3. Class H-3 (Allowed General Unsecured Claims).Class H-3 consists of all Allowed General Unsecured Claims of the Haisfield Debtors. Holders of Allowed Class H-

3 General Unsecured Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for their Allowed Class H-3 General Unsecured Claims, a beneficial interest in and periodic distributions from the Haisfield Creditors Trust equal to their Pro Rata share on account of their Allowed Class H-3 General Unsecured Claims to be paid by the Haisfield Creditors Trust on dates to be determined in the reasonable discretion of the Haisfield Creditors Trustee. Class H-3 Claims may be subject to dispute or objection and shall receive no distribution until such objection or dispute is resolved by Final Order.

4. Class H-4 (Haisfield Debtors).Class H-4 consists of the interests of the Haisfield Debtors. The Haisfield Debtors will receive distribution of, or shall retain, only the Retained Assets, the Personal Property, and the Exempt Property, subject to the terms and conditions of the Plan.

H. Reservation of Rights to Object to Claims or Interests.Neither the Haisfield Creditors Trustee, the Haisfield Debtors, nor the Committee has reviewed the validity or amount of the Claims and Interests for which a Proof of Claim has been filed in the Haisfield Bankruptcy Case. Accordingly, except as otherwise set forth herein, all rights to amend the Haisfield Debtors' Schedules and to object to such Claims or Interests are reserved by the Haisfield Creditors Trustee, the Haisfield Debtors, and the Committee notwithstanding the right of the holder of such Claim or Interest to vote on this Plan.

I. Means of Implementation.

A. Establishment of the Haisfield Creditors Trust.Prior to or on the Effective Date, the Haisfield Debtors shall execute the Haisfield Creditors Trust Agreement and take all steps necessary to establish the Haisfield Creditors Trust.

B. Purpose of the Haisfield Creditors Trust.

The Haisfield Creditors Trust is being established for the sole purpose of collecting, liquidating, and/or managing the Trust Assets contributed under this Plan to the Haisfield Creditors Trust and distributing the proceeds of the Trust Assets as identified in and prescribed by this Plan. The Haisfield Creditors Trust shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Haisfield Creditors Trust. Unless otherwise required by law, it is intended that all parties shall treat the Haisfield Creditors Trust as a liquidating trust for all federal income tax purposes.

C. The Haisfield Creditors Trust.

Holders of Allowed Claims against the Haisfield Debtors' Estate, to the extent not paid incident to and as a condition of confirmation of the Plan, will become beneficiaries of the Haisfield Creditors Trust, a creditors trust to be formed on the Effective Date of the Plan in substantially the form as attached hereto as Exhibit "A" to the Plan, which will be managed by an independent third party as the Haisfield Creditors Trustee, pursuant to the terms of the Haisfield Creditors Trust Agreement that will be prepared prior to the Effective Date of the Plan by counsel for the Committee with guidance from the Committee, the Debtors, and holders of allowed unsecured claims. The primary purpose of the Haisfield Creditors Trust will be to collect, liquidate, and/or manage the Trust Assets contributed under this Plan to the Haisfield Creditors Trust and distributing the proceeds thereof in the priority of their interests as established by the Plan. The Haisfield Creditors Trustee shall be selected by and in the sole discretion of the Committee and shall act as the trustee of the Haisfield Creditors Trust, which shall set forth the terms of his service and duties under the Haisfield Creditors Trust Agreement. Upon the Effective Date of the Plan, all of the Trust Assets shall be deemed transferred to the Haisfield Creditors Trust.

D. Contribution of Remaining Assets to the Haisfield Creditors Trust.

On the Effective Date of the Plan, the Debtors shall transfer all of their respective

Remaining Assets to the Haisfield Creditors Trust, which shall contribute such Remaining Assets to the Haisfield Creditors Trust pursuant to the terms of the Haisfield Creditors Trust Agreement. All Remaining Assets shall be transferred and contributed by the Debtors free and clear of all Liens, Claims, interests and encumbrances. Upon such transfers title to all Remaining Assets contributed to the Haisfield Creditors Trust shall vest in the Haisfield Creditors Trust on the Effective Date. For the avoidance of any doubt, following the contribution of the Remaining Assets to the Haisfield Creditors Trust pursuant to this Section 7.1.4 and the Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee shall have standing to pursue all Litigation Claims and to litigate and seek determination of, without limitation, all issues related to the Ocala Farm, the MDO Breeding Right, and the Progeny on behalf of the Haisfield Creditors Trust, subject only to any limitations set forth in this Article 7 or the Haisfield Creditors Trust Agreement.

E. MDO Breeding Right.

Each of Richard, Audrey, Marc, and Randy, either directly or through any entity they individually or jointly control, shall relinquish and convey to the Haisfield Debtors' Estate for the benefit of Haisfield Creditors Trust, their full interest, if any, in Medaglia I, LLC. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree that Medaglia I, LLC, is permitted to exercise the MDO Breeding Right pursuant to the Purchase and Sale Agreement identified on Exhibit "B" to the Plan and each agrees to subordinate any interest each has in the MDO Breeding Right to Medaglia I, LLC, such that Medaglia I, LLC, shall have the exclusive right to exercise the MDO Breeding Right. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree and represent that any part of Medaglia I, LLC's interest in the MDO Breeding Right has not been conveyed and that any purported conveyance of Medaglia I, LLC's interest in the MDO Breeding

Right is void. It is anticipated that the Haisfield Creditors Trustee will monetize the MDO Breeding Right either by exercising the MDO Breeding Right directly through Medaglia I, LLC, or selling the membership interests of Medaglia I, LLC, to a third party so that the third party can utilize the MDO Breeding Right. In the event that Darley Stud Management, LLC, disputes the right of Medaglia I, LLC, to exercise the MDO Breeding Right, each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, further agree to cooperate and assist the Debtors' Estates and/or the Haisfield Creditors Trustee, at the sole expense of the Haisfield Creditors Trustee, in utilizing, conveying, and/or monetizing the MDO Breeding Right on behalf of the Debtors' Estates and the Haisfield Creditors Trust. Such cooperation and assistance may include (a) a conveyance of their respective interest in the MDO Breeding Right for the benefit of the Haisfield Creditors Trust, or (b) participation by Richard, Audrey, Marc, or Randy as a member of a limited liability company owned at least fifty percent (50%) by one of them for the benefit of the Haisfield Creditors Trust. Neither Richard, Audrey, Marc nor Randy shall exercise or attempt to exercise the MDO Breeding Right personally or through any entity in which they have an interest unless requested by the Haisfield Creditors Trustee for the benefit of the Haisfield Creditors Trust. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree that each has no right to any proceeds from the MDO Breeding Right, however monetized; provided, however, that each shall have the non-exclusive right to purchase from the Haisfield Creditors Trust some or all of the MDO Breeding Right on such terms as they and the Haisfield Creditors Trustee may agree. In addition, Richard shall have the right to match any third-party bid regarding the sale of the MDO Breeding Right by the Haisfield Creditors Trustee. Further, each of Richard, Audrey,

and Marc may bid against each other if they desire to purchase some or all of the MDO Breeding Right from the Haisfield Creditors Trustee. Each of Richard, Audrey, Marc, and Randy, either directly or through any entity they individually or jointly control, further agree that the MDO Breeding Right for the 2017 breeding season will be exercised on behalf of the Haisfield Debtors' Estate for the benefit of the Haisfield Creditors Trust through the mare Texit in connection with a mare share agreement with Robert West Jr. and Millford Farm.

F. Progeny of MDO Breeding Right.

Each of Richard, Audrey, and Marc, either directly or through an entity they control, shall relinquish and convey to the Debtors' Estates for the benefit of the Haisfield Creditors Trust their full interest in the Progeny, whether or not owned directly or through an entity (which interest may be the subject of dispute in the Adversary Proceeding), such that the upon confirmation of the Plan the Haisfield Creditors Trust shall solely own all interests in the Progeny, except Richard and Audrey shall not relinquish and convey their interest in the four-year-old Baby Magic out of Magical Contender and Marc shall not relinquish and convey his indirect interest in the yearling out of Cabo in 2015 that was sold at auction in January 2016 by the Ocala Breeders Sales Company. The Haisfield Creditors Trust will have exclusive authority to market and sell by private sale or private or public auction the Progeny, or any interests therein, for the benefit of the Haisfield Creditors Trust. Each of Richard, Audrey, and Marc shall have the non-exclusive right to purchase from the Haisfield Creditors Trust some or all of the Progeny on such terms as they and the Haisfield Creditors Trustee may agree.

G. <u>The Breeder Awards.</u>

Each of Richard, Audrey, Marc, and Randy, either directly or through an entity they control, shall relinquish and convey to the Haisfield Debtors' Estate for the benefit of the Haisfield

Creditors Trust, 100% of their respective interests in the Breeders Awards, if any, owned by them, either directly or through an entity they control, such that upon confirmation of the Plan the Haisfield Creditors Trust shall solely own all interests in the Breeders Awards and shall have the exclusive right to their receipt and collection. The Haisfield Creditors Trustee will have exclusive authority to receive and collect the Breeders Awards for the benefit of the Haisfield Creditors Trust.

H. <u>The Debtors' Remaining Non-Exempt and Non-Retained Assets.</u>

The Haisfield Creditors Trustee will have the exclusive right and authority to market and sell by private sale or private or public auction all of the Remaining Assets, but specifically excluding the Exempt Property, the Personal Property, and the Retained Assets. Each of Richard, Audrey, and Marc shall have a non-exclusive right to purchase some or all of the Remaining Assets, on such terms as either of them and the Haisfield Creditors Trustee may agree.

I. <u>Richard/Audrey Contributed Funds.</u>

Upon the Effective Date all of the Retained Assets shall be deemed conveyed and transferred to the Haisfield Debtors, free and clear of all liens and encumbrances. The Haisfield Debtors will jointly contribute fifty percent (50%) of all Net Profits earned by the Haisfield Debtors during the Revenue Term from their operation and control of the Retained Assets, the Debtors' Horse Breeding Business, or from any other source, subject to an obligation to contribute no less than a minimum of One Million and One Hundred Thousand Dollars ($1,100,000) to the Haisfield Creditors Trust from such sources during the Revenue Term. The One Million and One Hundred Thousand Dollar minimum payment shall be reduced dollar for dollar by any cash contributed by the Debtors from their respective Debtor in Possession Accounts prior to the Effective Date as well as the 50% Net Profit contributions made to the Haisfield Creditors Trustee

as provided for herein. The Net Profits shall be computed on a monthly basis and reported pursuant to Section of 14.6 of the Plan. The Net Profits shall be paid, 50% to the Haisfield Debtors and 50% to the Haisfield Creditors Trustee, every three months, with such payments to be made to the Haisfield Creditors Trustee no later than the 21st day of the month following the end of each fiscal quarter following the Effective Date. The Debtors agree that they will receive no salary or distribution in connection with the operation of any entity in which the Debtors have, separately or together, an ownership interest, whether direct or indirect, that is conducting any business, including the Controlled Entities, other than the 50% of Net Profits retained by the Haisfield Debtors pursuant hereto. From and after the Effective Date, the Haisfield Debtors shall continue the Debtors' Horse Breeding Business, either at the Ocala Farm or, after such date as it may be sold, at such other location as the Haisfield Debtors may determine is suitable for the Debtors' Horse Breeding Business. The Debtors' Horse Breeding Business activities shall be monitored by the Haisfield Creditors Trustee and the Haisfield Debtors are not permitted to take on additional debt with respect to the Debtors' Horse Breeding Business over $25,000 without the consent of the Haisfield Creditors Trustee. Further, during the Revenue Term, all stud fees and other revenues of the Debtors' Horse Breeding Business shall be deposited into the operating bank account over which the Haisfield Creditors Trustee shall have online view access.

J. Tracy/Michael Contributed Funds. Pursuant to the Settlement Agreement and Release between the Committee, as representative of the Haisfield Debtors' Estate, and Tracy and Michael, which was approved by the Order Approving Notice of Intent to Compromise Claims Between the Official Committee of Unsecured Creditors and Tracy Eggleston and Michael Haisfield, entered in the Haisfield Bankruptcy Case at Docket No. 278, Tracy and Michael paid

the aggregate sum of One Hundred and Thirty-five Thousand and 00/100 Dollars ($135,000.00), which shall be released to and deposited in the Haisfield Creditors Trust on the Effective Date.

K. Marc/Randy/Lisa Contributed Funds.

Marc, Randy, and Lisa shall contribute to the Haisfield Creditors Trust funds totaling the aggregate sum of Six Hundred and Seventy Five Thousand Dollars ($675,000.00), which shall be released to the Haisfield Creditors Trust on the Effective Date.

L. The Stallions.

Pursuant to the Settlement Agreement, Marc has contributed to the Debtors' Estates, for the benefit of the Haisfield Creditors Trust, the Stallions. The Stallions were sold by public auction on or around February 7, 2017, and all net proceeds of the sale, if any, will be contributed to the Haisfield Creditors Trust on Effective Date.

M. Crystal Cove.

Pursuant to the Settlement Agreement, Marc has contributed to the Debtors' Estates, for the benefit of the Haisfield Creditors Trust, the mare known as Crystal Cove. The Committee and, upon the Committee's dissolution, the Haisfield Creditors Trust will have exclusive authority to market and sell Crystal Cove, whether in foal or without, by private sale or private or public auction for the benefit of the Haisfield Creditors Trust.

N. Haisfield Creditors Trust Management.

The Haisfield Creditors Trustee, who shall be designated by the Committee in its discretion prior to the Effective Date (but in no event shall the Haisfield Creditors Trustee be any Person who has served on the Committee), shall be vested with the power and authority set forth in the Haisfield Creditors Trust Agreement.

O. Haisfield Creditors Trust Structure.

As more fully set forth in the Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee shall oversee and direct the Haisfield Creditors Trust's operations and activities, including the retention of counsel, decisions to pursue or not pursue Litigation Claims belonging to the Haisfield Creditors Trust, and settlement of any such Litigation Claims belonging to the Haisfield Creditors Trust. In any event, any compromise or settlement of any Litigation Claim shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

P. Costs and Expenses of the Haisfield Creditors Trust.

All costs and expenses incurred by the Haisfield Creditors Trust shall be the obligation of the Haisfield Creditors Trust and shall be payable from the Trust Assets of the Haisfield Creditors Trust. Compensation of the Haisfield Creditors Trustee will be paid from the Trust Assets of the Haisfield Creditors Trust in such amount as calculated under the provisions of Section 326 of the Bankruptcy Code.

Q. Compensation of Professionals Retained by the Haisfield Creditors Trustee.

Professionals retained by the Haisfield Creditors Trustee shall be entitled to monthly compensation for fees and expenses incurred in carrying out their duties consistent with this Plan and the Haisfield Creditors Trust Agreement. Any such fees and expenses shall be payable from the Trust Assets of the Haisfield Creditors Trust in the ordinary course of business. The Haisfield Creditors Trustee's initial general and litigation counsel shall be Akerman LLP. The Haisfield Creditors Trustee shall provide regular reporting to parties in interest of all fees expended and shall file a report with the Bankruptcy Court prior to entry of a Final Decree that sets forth all funds received, administrative payments made, and creditor distributions made by the Haisfield Creditors Trustee.

R. Resignation and Removal of the Haisfield Creditors Trustee.

The Haisfield Creditors Trustee may resign and be discharged from any future obligations and liabilities under the Haisfield Creditors Trust Agreement by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice. The Haisfield Creditors Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Upon any such removal, the removed Haisfield Creditors Trustee shall be entitled to any reimbursement and indemnification set forth in the Haisfield Creditors Trust Agreement which remains due and owing to the Haisfield Creditors Trustee at the time of such removal. If, at any time, the Haisfield Creditors Trustee shall give notice of his intent to resign pursuant to Section 7.7 of the Haisfield Creditors Trust Agreement, or be removed or shall become incapable of acting, counsel to the Haisfield Creditors Trustee shall provide notice thereof to the Bankruptcy Court. The Office of the United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor Haisfield Creditors Trustee for the Haisfield Creditors Trust.

S. Continuation of Automatic Stay.

In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtors, the Estates, all Assets of the Debtors' Estates, the Haisfield Creditors Trustee, the Haisfield Creditors Trust, and the Trust Assets until the Final Distribution Date.

T. Dissolution of the Committee.

The Committee shall be dissolved upon the Effective Date of the Plan. In lieu of the Committee,

the Liquidating Agent and the Haisfield Creditors Trustee shall have standing to enforce the terms of the Plan until the Debtors' Chapter 11 Cases are closed.

U. Closing of the Chapter 11 Cases.

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Cases, when all Remaining Assets contributed to the Haisfield Creditors Trust have been liquidated and converted into Cash (other than those Remaining Assets as may be abandoned by the Haisfield Creditors Trust), and such Cash has been distributed in accordance with the Haisfield Creditors Trust Agreement and this Plan, and the Final Distribution made, the Haisfield Creditors Trustee shall seek a final decree and authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules. At any time prior to the request for a final decree, the Haisfield Debtors or the Trustee of the Haisfield Creditors Trust may petition the Bankruptcy Court to administratively close the case until completion of the payments required in this Plan Contributed Funds.

J. Unexpired Leases and Executory Contracts.

To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class H-4 Claim except as otherwise provided herein. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume)

by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.

## IV. CONFIRMATION

### A. Confirmation Hearing.

Section 1128 of the Code requires the Court, after notice, hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

Counsel for SWF Ocala Debtor:

Robert D. Wilcox
Wilcox Law Firm
814 North Highway A1A, Suite 202
Ponte Vedra Beach, FL 32082

Counsel for the Haisfield Debtors:

Jimmy D. Parrish, Esquire
Baker & Hostetler LLP
200 S. Orange Ave.
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432

Debtors:

Richard Haisfield
Audrey L. Haisfield
800 SW 85th Avenue
Ocala, FL 34481

United States Trustee:

Attn: Scott Bomkamp, Esq.
400 West Washington St., Suite 1100
Orlando, FL 32801

B. Confirmation Standards.

For a plan of reorganization to be confirmed the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. The Debtors believe that the Plan satisfies all of the requirements for Confirmation.

1. Best Interests Test.

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code.

To determine what holders of Claims and Equity Interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine how the assets and property of the Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case.

The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtors during the Chapter 11 Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a. the possible costs and expenses of the Chapter 7 trustee or trustees;

b. the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for the Debtors' assets caused by the forced Chapter 7 liquidation; and

c. the possible substantial increase in Claims, which would rank prior to or on parity with those of Unsecured Creditors.

2. <u>Financial Feasibility.</u>

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless the liquidation is proposed in the Plan. Because the Debtors' Plan is a liquidating Plan, the Debtors assert that the feasibility test is met.

3. Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless: (i) the legal, equitable, and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4. Confirmation Without Acceptance by all Impaired Classes; "Cramdown."

The Code contains provisions that enable the Court to confirm the Plan, even though all Impaired Classes have not accepted the Plan, provided that the Plan has been accepted by at least one Impaired Class of Claims Section 1129(b)(1) of the Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly and it is fair and equitable with respect to each Class of Claims that is Impaired under and has not accepted the Plan.

**THE DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

C. Consummation.

The Plan will be consummated and payments made if the Plan is Confirmed pursuant to a Final Order of the Court and Plan Distributions commence. It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

D. Effects of Confirmation.

1. Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtors shall be authorized, without further application for an order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

2. Binding Effect of Confirmation

Confirmation of the Plan will legally bind the Debtors, all Creditors, Interest Holders, and other Parties in Interest to the provisions of the Plan whether or not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder voted to accept the Plan.

3. Discharge of Claims

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) upon the completion of all payments required under the Plan or grant of early discharge by the Bankruptcy Court, the Confirmation Order shall operate as a discharge under 11 U.S.C. §1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtors and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to §502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the completion of all payments required under the Plan (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtors and its property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtors shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code.

4. Continued Stay After Confirmation and Grant of Discharge

As of the Confirmation Date, except as provided in the Plan, all Persons shall be stayed and precluded from asserting against the Debtors any other or further Claims, debts, rights, causes of action, liabilities, or equity interests based on any act, omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date. Upon completion of the payments required under the Plan or grant of early discharge, the Confirmation Order shall be a judicial determination of discharge of all Claims against Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and shall void any judgment obtained or entered against Debtors at any time to the extent the judgment relates to discharged Claims.

5. Injunction

As part of the Confirmation Order, the Bankruptcy Court shall stay and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtors or any of their assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Debtors; provided, however, that such stay shall not apply to any Claim asserted against the Debtors by a claimant based upon a default by the Debtors in performance of its obligations to the claimant under the Plan. Upon completion of payments required under the Plan or grant of early discharge, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtors or any of their assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative

documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Debtors; provided, however, that such stay shall not apply to any Claim asserted against the Debtors by a claimant based upon a default by the Debtors in performance of its obligations to the claimant under the Plan.

6. Post-Confirmation Status Report

Pursuant to the Plan, within 180 days of the entry of the Confirmation Order, the Haisfield Debtors (but not necessarily the SWF Ocala Debtor) will file status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post- confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## V. ALTERNATIVE TO THE PLAN

If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternative is a liquidation of the Debtors under Chapter 7 of the Code. The Debtors believe that any liquidation is a much less attractive alternative to Creditors. In a Chapter 7 liquidation, the Creditors holding Allowed Class H-4 Claims would be greatly diluted by litigation expenses and a recovery, if any, will likely be delayed for several years. Debtors believe that liquidation of all personal property in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to Creditors in accordance with the priorities established by the Code. The Debtors' analysis of the probable recovery to Creditors and holders of equity Interest is set forth in the Liquidation Analysis.

## VI. HAISFIELD DEBTORS DISCLOSURE STATEMENT

All creditors are urged to review the Third Amended Disclosure Statement (Doc. 395) filed in the Haisfield Case and attached as Exhibit 2 to this document.

## VII. CONCLUSION

The SWF Ocala Debtor recommends that holders of Claims vote to accept the Plan.

DATED this 21st day of March, 2017, in Ponte Vedra Beach, Florida.

WILCOX LAW FIRM

/s/ ***Robert Wilcox***
Robert D. Wilcox
Florida Bar No.: 755168
Elizabeth R. P. Bowen
Florida Bar No. 97297
814 North Highway A1A, Suite 202
Ponte Vedra Beach, FL 32082
Telephone: (904) 405-1250
rw@wlflaw.com
eb@wlflaw.com