# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re: Case 3:15-bk-03677-PMG Chapter 11

STONEWALL FARM OCALA, LLC,

Debtor.
________________________________________/

# FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF RICHARD HAISFIELD AND AUDREY L. HAISFIELD, AND STONEWALL FARM OCALA, LLC[1]

ROBERT D. WILCOX, ESQ.
WILCOX LAW FIRM
814 A1A NORTH, SUITE W-15
PONTE VEDRA BEACH, FL 32082

ATTORNEYS FOR STONEWALL FARM OCALA, LLC

Date: March 21, 2017

[1] This Joint Plan was also filed on March 9, 2017 in the Chapter 11 bankruptcy case of *In re: Richard Haisfield and Audrey Haisfield*, United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Case No. 3:15-bk-03677-PMG, as Docket No. 394. It is the intention of the debtor that this Joint Plan is in substance identical to the one filed in *In re: Richard Haisfield and Audrey Haisfield*.

## TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ......... 1
A. Scope of Definitions ........ 1
B. Definitions........ 2
1.1 Acceptable Offer........ 2
1.2 Administrative Claim........ 2
1.3 Administrative Claims Bar Date........ 2
1.4 Adversary Proceeding........ 2
1.5 Allowed _____ Claim or Allowed Class _____ Claim ........ 2
1.6 Allowed Claim or Allowed Interest........ 2
1.7 Assets ........ 3
1.8 Audrey........ 3
1.9 Available Cash ........ 3
1.10 Ballot........ 3
1.11 Bankruptcy Code ........ 3
1.12 Bankruptcy Court........ 3
1.13 Bankruptcy Rules........ 3
1.14 Beneficiary or Beneficiaries ........ 3
1.15 Breeder Awards ........ 3
1.16 Business Day........ 4
1.17 Cash........ 4
1.18 Chapter 11 Cases........ 4
1.19 Claim........ 4
1.20 Class ........ 4
1.21 Collateral........ 4
1.22 Committee........ 4
1.23 Confirmation ........ 4
1.24 Confirmation Date ........ 4
1.25 Confirmation Hearing ........ 4
1.26 Confirmation Order........ 4
1.27 Contributed Horses ........ 4
1.28 Contributed Stallions ........ 4
1.29 Controlled Entities ........ 4
1.30 Creditor ........ 5
1.31 Debtors........ 5
1.32 Debtors' Horse Breeding Business........ 5
1.33 Debtor Releasors........ 5
1.34 Debtor Releasees........ 5
1.35 Disclosure Statement ........ 5
1.36 Disputed Claim or Disputed Interest........ 5
1.37 Disputed Claims Reserve........ 5
1.38 Distribution Record Date ........ 5
1.39 Effective Date ........ 5
1.40 Entity........ 6
1.41 Estates ........ 6
1.42 Exempt Property ........ 6

1.43 Expense ........ 6
1.44 File or Filed ........ 6
1.45 Final Distribution ........ 6
1.46 Final Distribution Date ........ 6
1.47 Final Order ........ 6
1.48 Final Tax Day ........ 7
1.49 General Unsecured Claim ........ 7
1.50 Haisfield Bankruptcy Case ........ 7
1.51 Haisfield Creditors Trust ........ 7
1.52 Haisfield Creditors Trust Agreement ........ 7
1.53 Haisfield Creditors Trustee ........ 7
1.54 Haisfield Debtors ........ 7
1.55 Haisfield Petition Date ........ 7
1.56 Impaired ........ 7
1.57 Interest ........ 7
1.58 IRC ........ 7
1.59 Lien ........ 8
1.60 Liquidating Agent ........ 8
1.61 Litigation Claims ........ 8
1.62 Lisa ........ 8
1.63 Marc ........ 8
1.64 Marc/Randy/Lisa Contributed Funds ........ 8
1.65 Michael ........ 8
1.66 MDO Breeding Right ........ 9
1.67 Net Profits ........ 9
1.68 Ocala Farm ........ 9
1.69 Ocala Farm ........ 9
1.70 Other Lawsuits ........ 9
1.71 Person ........ 9
1.72 Personal Property ........ 9
1.73 Petition Date ........ 9
1.74 Plan ........ 9
1.75 Plan Proponent ........ 9
1.76 Priority Claim ........ 9
1.77 Priority Tax Claim ........ 9
1.78 Professional ........ 9
1.79 Professional Claim ........ 10
1.80 Progeny ........ 10
1.81 Proof of Claim ........ 10
1.82 Pro Rata ........ 10
1.83 Randy ........ 10
1.84 Remaining Assets ........ 10
1.85 Retained Assets ........ 10
1.86 Revenue ........ 10
1.87 Revenue Term ........ 10
1.88 Richard ........ 10

1.89 Richard/Audrey Contributed Funds ........ 11
1.90 Scheduled ........ 11
1.91 Schedules ........ 11
1.92 Secured Claim ........ 11
1.93 Settlement Agreement ........ 11
1.94 SWF Ocala Bankruptcy Case ........ 11
1.95 SWF Ocala Debtor ........ 11
1.96 SWF Petition Date ........ 11
1.97 Tracy ........ 11
1.98 Tracy/Michael Contributed Funds ........ 11
1.99 Trust Estate or Trust Assets ........ 11
1.100 Unimpaired ........ 11
1.101 United States Trustee ........ 12
1.102 Unsecured Claim ........ 12
C. Rules of Interpretation ........ 12
D. Computation of Time ........ 12

ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS ........ 13
2.1 Administrative Claims ........ 13
2.2 Statutory Fees ........ 13
2.3 Professional Claims ........ 13
2.4 Deadline for Filing Administrative Claims ........ 13
2.5 Priority Tax Claims ........ 14
2.6 Other Priority Claims ........ 14

ARTICLE 3 SWF OCALA BANKRUPTCY CASE ........ 14
A. Separate Administration ........ 14
B. Classification and Treatment of Classified Claims and Interests ........ 15
3.1 General ........ 15
3.2 Classification ........ 15
3.2.1 Class SWF-1 ........ 15
3.2.2 Class SWF-2 ........ 15
3.2.3 Class SWF-3 ........ 15
3.2.4 Class SWF-4 ........ 15
3.2.5 Class SWF-5 ........ 15
3.2.6 Class SWF-6 ........ 15
C. Identification of Classes of Claims and Interests Impaired and Not Impaired ........ 15
3.1 Unimpaired Classes of Claims and Interests ........ 15
3.2 Impaired Classes of Claims and Interests ........ 15
D. Provisions for the Treatment of Impaired Claims and Interests ........ 15
3.1 Summary ........ 15
3.2 Classification and Treatment ........ 16
3.2.1 Class SWF-1 (Allowed Secured Claim of Carl and Joan Bowling) ........ 16
3.2.2 Class SWF-2 (Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck) ........ 16
3.2.3 Class SWF-3 (Allowed General Unsecured Claims) ........ 16

3.2.4 Class SWF-4 (The Allowed Claim of the Committee against the SWF Ocala Debtor) ... 16
3.2.5 Class SWF-5 (The Unsecured Claim of Stonewall Phoenix, LLC ... 16
3.2.6 Class SWF-6 (The Equity Interests in SWF Ocala)... 17
3.3 Reservation of Rights to Object to Claims or Interests... 17

ARTICLE 4 HAISFIELD BANKRUPTCY CASE... 17
A. Separate Administration... 17
B. Classification and Treatment of Classified Claims and Interests ... 17
4.1 General... 17
4.2 Classification... 17
4.2.1 Class H-1 (BMW Financial Services) ... 17
4.2.2 Class H-2 (The Greatness Syndicate) ... 18
4.2.3 Class H-3 (Allowed General Unsecured Claims)... 18
4.2.4 Class H-4 (The Haisfield Debtors) ... 18
C. Identification of Classes of Claims and Interests Impaired and Not Impaired... 18
4.1 Unimpaired Classes of Claims and Interests ... 18
4.2 Impaired Classes of Claims and Interests ... 18
D. Provisions for the Treatment of Impaired Claims and Interests ... 18
4.1 Summary... 18
4.2 Classification and Treatment ... 18
4.2.1 Class H-1 (BMW Financial Services)... 18
4.2.2 Class H-2 (The Greatness Syndicate) ... 19
4.2.3 Class H-3 (Allowed General Unsecured Claims)... 19
4.2.4 Class H-4 (Haisfield Debtors)... 19
4.3 Reservation of Rights to Object to Claims or Interests... 19

ARTICLE 5 TREATMENT OF EXECUTORY CONTRACTS ... 19
5.1 Rejection ... 19
5.2 Approval of Rejection; Rejection Damages Claims Bar Date... 20

ARTICLE 6 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE SWF OCALA DEBTOR'S PLAN ... 20
6.1 The Ocala Farm... 20
6.1.1 *Assignment of Interests in SWF Ocala Debtor* ... 20
6.1.2 *Sale of the Ocala Farm* ... 20
6.1.3 *Proceeds of the Ocala Farm* ... 21
6.1.4 *Stay of Ocala Farm Foreclosure* ... 21
6.1.5 *Costs and Expenses of the Liquidating Agent*... 21
6.1.6 *Compensation of the Liquidating Agent* ... 21
6.1.7 *Resignation and Removal of the Liquidating Agent* ... 21

ARTICLE 7 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE HAISFIELD DEBTORS' PLAN ... 22
7.1 The Haisfield Creditors Trust ... 22
7.1.1 *Establishment of the Haisfield Creditors Trust* ... 22

7.1.2 *Purpose of the Haisfield Creditors Trust* .... 22
7.1.3 *The Haisfield Creditors Trust* .... 22
7.1.4 *Contribution of Remaining Assets to the Haisfield Creditors Trust* .... 22
7.1.5 *MDO Breeding Right* .... 23
7.1.6 *Progeny of MDO Breeding Right* .... 23
7.1.7 *The Breeder Awards* .... 24
7.1.8 *The Debtors' Remaining Non-Exempt and Non-Retained Assets* .... 24
7.1.9 *Richard/Audrey Contributed Funds* .... 24
7.1.10 *Tracy/Michael Contributed Funds* .... 25
7.1.11 *Marc/Randy/Lisa Contributed Funds* .... 25
7.1.12 *The Stallions* .... 25
7.1.13 *Crystal Cove* .... 25
7.1.14 *Haisfield Creditors Trust Management* .... 25
7.1.15 *Haisfield Creditors Trust Structure* .... 25
7.1.16 *Costs and Expenses of the Haisfield Creditors Trust* .... 25
7.1.17 *Compensation of Professionals Retained by the Haisfield Creditors Trustee* .... 26
7.1.18 *Resignation and Removal of the Haisfield Creditors Trustee* .... 26
7.1.19 *Continuation of Automatic Stay* .... 26
7.2 Dissolution of the Committee .... 26
7.3 Closing of the Chapter 11 Cases .... 26

ARTICLE 8 POST-CONFIRMATION LITIGATION .... 27
8.1 Transfer and Enforcement of Causes of Action .... 27
8.2 Objections to Claims .... 27

ARTICLE 9 DISTRIBUTIONS .... 27
9.1 Delivery of Distributions in General .... 27
9.2 Cash Payments .... 27
9.3 Interest on Claims .... 28
9.4 No *De Minimis* Distributions .... 28
9.5 Face Amount .... 28
9.6 Undeliverable Distributions .... 28
9.7 Interim Distributions .... 28
9.8 Final Distribution .... 28
9.9 Disputed Claims Reserves .... 28
9.10 Compliance with Tax Requirements .... 28

ARTICLE 10 CONDITIONS PRECEDENT .... 29
10.1 Conditions to Confirmation .... 29
10.1.1 Confirmation Order .... 29
10.2 Conditions to the Effective Date .... 29
10.2.1 Confirmation Order .... 29
10.2.2 Stay of the Confirmation Order .... 29

10.2.3 Execution of Documents ........ 29
10.3 Termination of Plan for Failure To Become Effective ........ 29
10.4 Waiver of Conditions ........ 29
10.5 Notice of Effective Date ........ 29

ARTICLE 11 EFFECT OF CONFIRMATION ........ 30
11.1 Jurisdiction of Court ........ 30
11.2 Binding Effect ........ 30
11.3 Exculpation ........ 30
11.4 Injunctions ........ 30
11.5 Channeling Injunction/Bar Order ........ 31
11.6 Limitation of Liability ........ 31
11.7 Cancellation and Release of Existing Indebtedness and Liens ........ 31

ARTICLE 12 RETENTION OF JURISDICTION ........ 32
12.1 Ongoing Bankruptcy Court Jurisdiction ........ 32

ARTICLE 13 ACCEPTANCE OR REJECTION OF THE PLAN ........ 34
13.1 Persons Entitled to Vote ........ 34
13.2 Acceptance by Impaired Classes ........ 34

ARTICLE 14 MISCELLANEOUS PROVISIONS ........ 35
14.1 Revocation of the Plan ........ 35
14.2 Full Disclosure of Assets and Litigation Claims ........ 35
14.3 Title to the Debtors' Remaining Assets and Litigation Claims of the Debtors ........ 35
14.4 Retained Assets ........ 35
14.5 Retained Assets in the Event of Death ........ 35
14.6 Monthly Profit/Loss Statements and Annual Pro Formas ........ 36
14.7 Access to Books and Records ........ 37
14.8 Discharge of Haisfield Debtors ........ 37
14.9 Consent to Denial of Discharge ........ 37
14.10 The Haisfield Debtors—Cooperation; Turnover; Further Assurances ........ 37
14.11 Marc/Randy/Lisa—Cooperation; Turnover; Further Assurances ........ 38
14.12 Release of Claims Against Marc, Randy, and Lisa ........ 38
14.13 Statute of Limitations ........ 38
14.14 Stay of Adversary Proceeding ........ 38
14.15 Governing Law ........ 39
14.16 No Admissions ........ 39
14.17 Severability of Plan Provisions ........ 39
14.18 Successors and Assigns ........ 39
14.19 Exemption from Certain Transfer Taxes ........ 39
14.20 Preservation of Rights of Setoffs ........ 39
14.21 Preservation of Rights And Defenses ........ 40
14.22 No Injunctive Relief ........ 40
14.23 Non-Business Day ........ 40

# EXHIBITS


| | |
|---|---|
| Exhibit "A" | Haisfield Creditors Trust Agreement for the Haisfield Creditors Trust |
| Exhibit "B" | Schedule of Executory Contracts and Unexpired Leases to be Assumed |
| Exhibit "C" | Schedule of Retained Assets |
| Exhibit "D" | Schedule of Personal Property |
| Exhibit "E" | Schedule of Exempt Property |

# INTRODUCTION

Richard Haisfield and Audrey L. Haisfield (the "Haisfield Debtors") and Stonewall Farm Ocala, LLC (the "SWF Ocala Debtor") (collectively, the "Debtors"), joined by the Official Committee of Unsecured Creditors of Richard Haisfield and Audrey L. Haisfield (the "Committee"), propose this First Amended Joint Chapter 11 Plan of Liquidation (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Estates of the Debtors. The Debtors and the Committee are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code. All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan. Reference is made to the Disclosure Statement, to be distributed by the Debtors, for a discussion of the Debtors' histories, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtors' remaining assets, and a summary and analysis of the Plan and certain related matters.

This is a liquidating Plan pursuant to which substantially all of the Haisfield Debtors' assets and the net liquidation proceeds of the Ocala Farm and all other assets of the SWF Ocala Debtor's Estate which are not otherwise administered, are to be transferred to a Haisfield Creditors Trust which will liquidate the assets and prosecute or resolve all Litigation Claims held by the Debtors. All resulting funds will be distributed to certain holders of Allowed Claims as against the Haisfield Debtors as set forth herein, whose claims against the Haisfield Debtors will be exchanged for a Pro Rata beneficial interest in the Haisfield Creditors Trust.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of claims and/or interests until such time as the Disclosure Statement in each of the Debtors' cases has been approved by the Bankruptcy Court. The Debtors urge all holders of Claims and Interests entitled to vote on the Plan to read the Plan and the Disclosure Statements in their entirety before voting to accept or reject the Plan. To the extent, if any, that the Disclosure Statements are inconsistent with the Plan, the Plan will govern. No solicitation materials other than the Disclosure Statements and any schedules and exhibits attached thereto or referenced therein, or otherwise enclosed with the Disclosure Statement served by the Debtors or the Committee on interested parties, or as otherwise ordered by the Bankruptcy Court, have been authorized by the Debtors, the Committee, or the Bankruptcy Court for use in soliciting acceptances of the Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Federal Bankruptcy Rule 3019, and Article 14 of this Plan, the Debtors and the Committee expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Confirmation Date (defined below).

# ARTICLE 1
# DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

## A. Scope of Definitions

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively. Whenever the context

requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B. Definitions**

In addition to such other terms as may be defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of the Plan.

**1.1 Acceptable Offer**. An offer to purchase the Ocala Farm that is acceptable to the Liquidating Agent, in its sole discretion.

**1.2 Administrative Claim**. A Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Cases asserted or arising under Sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including any (i) actual and necessary cost or expense of preserving the Debtors' Estates arising on or after the Petition Date, (ii) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, including without limitation pursuant to Section 503(b)(4), (iii) compensation or reimbursement for actual, necessary expenses in making a substantial contribution in the Chapter 11 Cases, and (iv) fees or charges assessed against the Debtors' Estates under section 1930 of title 28 of the United States Code.

**1.3 Administrative Claims Bar Date.** Shall be the administrative claims bar date set by the Bankruptcy Court in connection with its Order Scheduling Hearing on Disclosure Statement, and Fixing Time for Filing Fee and Other Administrative Expense Applications or such other odreder as may be entered by the Bankruptcy Court.

**1.4 Adversary Proceeding.** The action styled *Official Committee of Unsecured Creditors of Richard Haisfield and Audrey Haisfield v. 1st Choice Breeding, LLC, et al.*, currently pending in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, and assigned case number 3:13-ap-00065-PMG.

**1.5 Allowed _____ Claim or Allowed Class _____ Claim.** A Claim of the type specified or in the Class specified that is also an Allowed Claim (*e.g.*, an Allowed Class H-3 Claim is a Claim classified in Class H-3 that is also an Allowed Claim).

**1.6 Allowed Claim or Allowed Interest.** A Claim against or Interest in any of the Debtors or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no Proof of Claim or Interest has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the applicable periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court sought pursuant to Section 8.2 of the Plan or otherwise entered by the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final

Order, or (d) that is expressly allowed in a liquidated amount in the Plan. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" or "Allowed Interest" shall not include interest, fees (including but not limited to late charges and attorneys' fees), or penalties on such Claim or Interest accruing after the Petition Date.

**1.7 Assets.** All legal or equitable pre-petition and post-petition interests of any of the Debtors, whether directly or indirectly owned or controlled by any of them or by any other business in which any of them have or had an interest, in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, beneficial interests in trusts, claims, causes of actions, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

**1.8 Audrey.** Audrey L. Haisfield.

**1.9 Available Cash.** All Cash available for distribution to Beneficiaries under the Haisfield Creditors Trust Agreement, less the amount of Cash deposited in the Disputed Claims Reserve.

**1.10 Ballot.** The form or forms distributed to each holder of an impaired Claim or Interest entitled to vote on the Plan, on which the holder indicates acceptance or rejection of the Plan and, where applicable, any election for treatment of such Claim under the Plan.

**1.11 Bankruptcy Code.** Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

**1.12 Bankruptcy Court.** The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, and, to the extent it may exercise jurisdiction in the Chapter 11 Cases, the United States District Court for the Middle District of Florida, or if either such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that properly exercises jurisdiction over the Chapter 11 Cases.

**1.13 Bankruptcy Rules.** The Federal Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Middle District of Florida, and the guidelines and requirements of the Office of the United States Trustee, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

**1.14 Beneficiary or Beneficiaries.** The holder(s) of an Allowed Claim against the Haisfield Debtors, as may be determined from time to time in accordance with the Plan and Haisfield Creditors Trust Agreement.

**1.15 Breeder Awards.** All monetary awards, incentives, or other receipts by the Debtors and/or SWF Stallions (the reference to SWF Stallions shall include, without limitation, any entity of similar name and in which Richard or Audrey have or had an interest) received or due to be paid on account of participation in the Kentucky Thoroughbred Breeders' Incentive Fund, including without limitation any such funds as may be held pursuant to the Bankruptcy

Court's Order Granting in Part and Denying in Part Motion of the Committee for Preliminary Injunction, dated August 13, 2013, entered in the Adversary Proceeding [Doc. 47].

**1.16 Business Day.** Any day other than a Saturday, Sunday, or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

**1.17 Cash.** Legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars, including but not limited to, checks, bank deposits, or other similar items.

**1.18 Chapter 11 Cases.** The Haisfield Bankruptcy Case and the SWF Ocala Bankruptcy Case.

**1.19 Claim.** A right of a Creditor against the Debtors, or any of them, whether or not asserted or allowed, of the type described in Bankruptcy Code section 101(5), as construed by Bankruptcy Code section 102(2).

**1.20 Class.** A group of Claims or Interests as classified in a particular class under the Plan pursuant to Bankruptcy Code Section 1122.

**1.21 Collateral.** Any property or interest in property of the Debtors subject to a Lien to secure payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.22 Committee.** The Official Committee of Unsecured Creditors appointed by the United States Trustee in the Haisfield Bankruptcy Case on or about April 13, 2012.

**1.23 Confirmation.** Entry of the Confirmation Order by the Bankruptcy Court.

**1.24 Confirmation Date.** The date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.25 Confirmation Hearing.** The duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code Section 1128, including any continuances thereof.

**1.26 Confirmation Order.** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

**1.27 Contributed Horses.** Shall mean the Contributed Stallions and the mare known as Crystal Cove contributed by Marc pursuant to the terms of the Settlement Agreement.

**1.28 Contributed Stallions.** Shall mean the stallions known as Value Plus, DaStoops, and It's No Joke contributed by Marc pursuant to the terms of the Settlement Agreement.

**1.29 Controlled Entities.** Those entities owned or controlled by Richard, Audrey, Marc, Randy or Lisa, including without limitation the Audrey Haisfield Revocable Living Trust; Haisfield Holdings, LLC; Haisfield Management, LLC; Haisfield Ventures, LP; the Richard Haisfield Revocable Living Trust; Nevertell Farm Kentucky II, LLC; Stone*Wall Farm

Stallions, LLC; ALH Management, Inc.; Atoka Bloodstock, LLC; Nevertell Farm Kentucky IV, LLC; Stone*Wall Farm Broodmares, LLC; Stone*Wall Farm Kentucky, LLC; Stone*Wall Farm Stallions Racing Division I, LLC; Stone*Wall Farm Stallions I, LLC; Stone*Wall Stallions XII, LLC; Stone*Wall Farm Stallions 53, LLC; the SWF Ocala Debtor; Stonewall Phoenix, LLC, Plantation Classic Investments, Inc.; Haisfield Ventures II, LLC; and Haisfield Ventures III, LLC.; 1st Choice Breeding, LLC; Family Broodmares, LLC; Family Broodmares II, LLC; Family Broodmares III, LLC; MAL Equine, LLC; Medaglia I, LLC; Palm Beach Racing II, LLC; Palm Beach Racing Partnership, LLLP; Hallmarc Stallions, LLC; All Star Equine Investments, LLC; Woodford Stallions, LLC; Prestige Stallions, LLC, and All Star Broodmare Investments, LLC.

**1.30 Creditor.** Any Entity who holds a Claim against the Debtors, or any of them.

**1.31 Debtors**. Richard Haisfield, Audrey L. Haisfield, and Stonewall Farm Ocala, LLC.

**1.32 Debtors' Horse Breeding Business.** The Haisfield Debtors' business of boarding, breeding, raising, racing, purchase and sale of thoroughbred horses, including colts, yearlings, mares or stallions.

**1.33 Debtor Releasors.** The Debtors' Estates and their Creditors, the Committee and its members, the Haisfield Creditors Trust, and each of their representatives, attorneys, predecessors, successors, and trustees.

**1.34 Debtor Releasees.** Marc, Randy, and Lisa, each of their Controlled Entities, as applicable, and each and every one of his, her or its spouses, children, representatives, attorneys, predecessors, successors, and trustees.

**1.35 Disclosure Statement.** That certain written disclosure statement that relates to this Plan as filed in the Chapter 11 Cases by the respective Debtors, including the schedules and exhibits attached thereto, as they may be amended, modified or supplemented from time to time.

**1.36 Disputed Claim or Disputed Interest.** A Claim or Interest, respectively, that the Debtors, or any of them, have Scheduled as "disputed," "contingent" or "unliquidated," or as to which a proof of Claim or Interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Haisfield Creditors Trustee or any other party in interest entitled to do so, which objection, if timely Filed, has not been withdrawn or has not been overruled or denied by a Final Order.

**1.37 Disputed Claims Reserve.** Shall have the meaning set forth in Section 4.1 of the Haisfield Creditors Trust Agreement.

**1.38 Distribution Record Date.** The record date for the purposes of making distributions under the Plan on account of Allowed Claims or Interests, which date shall be designated in the Confirmation Order.

**1.39 Effective Date.** A date selected by the Haisfield Creditor Trustee that is (a) at least eleven (11) days following occurrence of the Confirmation Date; and (b) no more than five

(5) Business Days following the first date on which no stay of the Confirmation Order is in effect and all conditions to the Effective Date set forth in Article 10 of the Plan have been satisfied or, if waivable, waived pursuant to Section 10.4 hereof.

**1.40 Entity.** A Person, an estate, a trust, the United States Trustee, a "governmental unit" as that term is defined in Bankruptcy Code Section 101(27), or any other entity as defined in Section 101(15) of the Bankruptcy Code.

**1.41 Estates.** The estates created pursuant to Section 541 of the Bankruptcy Code by the commencement of the respective Chapter 11 Cases.

**1.42 Exempt Property.** All of the Haisfield Debtors' Assets listed on the attached Exhibit "E."

**1.43 Expenses.** The necessary costs paid to conduct the Debtors' Horse Breeding Business, including without limitation rent, board, feed, stud or other breeding fees paid, veterinary expense, utilities, transportation, labor, and any other usual and customary expense paid incident to the Debtors' Horse Breeding Business, but excluding salary or other compensation to the Haisfield Debtors.

**1.44 File or Filed.** To file, or to have been filed, with the Clerk of the Bankruptcy Court in either of the Chapter 11 Cases.

**1.45 Final Distribution.** Shall be the distributions described in Section 9.8 hereof.

**1.46 Final Distribution Date.** Shall be the date upon which the Final Distribution is made. The Final Distribution Date shall be a date determined by the Haisfield Creditors Trustee which is (a) after the liquidation into Cash of all assets of the Haisfield Creditors Trust (other than those assets abandoned by the Haisfield Creditors Trust) and collection of other sums due or otherwise remitted or returned to the Estates, and (b) on or after which the Haisfield Creditors Trust makes a Final Distribution from the Disputed Claims Reserve.

**1.47 Final Order.** An order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for re-argument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for re-argument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such order under Rule 9024 of the Bankruptcy Rules, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 10 days after the entry of such order), or (b) any appeal, any petition for certiorari or any motion for re-argument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or re-argument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for re-argument, rehearing or a new trial shall have expired without such actions having been taken.

**1.48 Final Tax Day.** Shall mean the last day in the taxable year of the Haisfield Creditors Trust which includes the Termination Date (as defined in the Haisfield Creditors Trust Agreement).

**1.49 General Unsecured Claim.** Any Claim against the Debtors, or any of them, that is not an Administrative Claim, Secured Claim, Professional Claim, Priority Tax Claim, or Priority Claim. General Unsecured Claims shall include, without limitation, any and all unsecured trade, contribution, indemnification, reimbursement, if any, employee contract, unsecured deficiency Claims, and lease and contract rejection Claims against the Debtors, or any of them.

**1.50 Haisfield Bankruptcy Case.** Shall mean the jointly administered, Chapter 11 bankruptcy cases of Richard and Audrey styled *In re Richard Haisfield and Audrey L. Haisfield, Debtors; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Case No. 3:11-bk-08765-PMG.*

**1.51 Haisfield Creditors Trust.** The Haisfield Creditors Trust, in the form as attached hereto as Exhibit "A" and established pursuant to Section 7.1 of the Plan.

**1.52 Haisfield Creditors Trust Agreement.** Shall mean the Haisfield Creditors Trust Agreement for the Haisfield Creditors Trust.

**1.53 Haisfield Creditors Trustee.** The Haisfield Creditors Trustee of the Haisfield Creditors Trust, as shall be designated by the Committee in its discretion prior to the Effective Date, or his, her, or its successor as established from time to time. The Haisfield Creditors Trustee may be the same person or entity as the Liquidating Agent. In no event shall a member of the Committee serve as the Haisfield Creditor Trustee.

**1.54 Haisfield Debtors.** Richard and Audrey L. Haisfield.

**1.55 Haisfield Petition Date.** May 26, 2011, the petition date established by the Bankruptcy Court in its Order Granting the Motion of Official Committee of Unsecured Creditors of Richard Haisfield and Audrey L. Haisfield to Consolidate the Debtors' Involuntary Chapter 7 Converted Cases with the Haisfield Debtors' Voluntary Chapter 11 Case entered on November 30, 2012.

**1.56 Impaired.** When used with reference to a Claim or an Interest, "Impaired" shall have the meaning ascribed to it in Bankruptcy Code Section 1124.

**1.57 Interest.** An issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, limited liability company membership interests, or other equity interests of the Debtors, or any of them.

**1.58 IRC.** Shall mean the Internal Revenue Code of 1986, as amended from time to time.

**1.59 Lien.** A charge against, interest in, or other encumbrance upon property to secure payment of a debt or performance of an obligation.

**1.60 Liquidating Agent.** The Liquidating Agent of the SWF Ocala Debtor, as shall be designated by the Committee in its discretion prior to the Effective Date, or his or her successor as established from time to time. The Liquidating Agent may be the same person or entity as the Haisfield Creditors Trustee. In no event shall a member of the Committee serve as the Haisfield Creditor Trustee.

**1.61 Litigation Claims.** Shall mean, except as provided otherwise herein, the Confirmation Order, or any document, instrument, release or other agreement entered into in connection with the Plan, all claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Chapter 5 avoidance or recovery actions under the Bankruptcy Code or avoidance or recovery claims recognized under any applicable state law), and including specifically but without limitation all claims advanced in the Adversary Proceeding, and all claims related to the Ocala Farm, the MDO Breeding Right, and the Progeny, whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted after the Effective Date based on law or equity. Litigation Claims include, without limitation, those which are: (i) property of the bankruptcy estates under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xi) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xii) which arise under or as a result of any section of the Bankruptcy Code; (xiii) for common law torts or aiding and abetting common law torts; (xiv) contract or quasi contract; (xv) derivative based; (xvi) statutory claims; (xvii) arise out of or are related in any way to actions or claims pending as of the Effective Date; (xviii) for unjust enrichment; (xix) to disallow or subordinate any proof of claim filed in the Chapter 11 Cases; (xx) to recover an avoidable transfer from any mediate or subsequent transferee; or (xxi) any claim held or assertable by the Haisfield Creditors Trustee on behalf of the Haisfield Creditors Trust.

**1.62 Lisa**. Lisa Wilkinson.

**1.63 Marc**. Marc Haisfield.

**1.64 Marc/Randy/Lisa Contributed Funds.** Shall have the meaning established in Section 7.1.13 of the Plan.

**1.65 Michael.** Michael Haisfield

**1.66 MDO Breeding Right.** The contractual right to a lifetime Northern Hemisphere breeding, exercisable annually, with the stallion *Medaglia d'Oro*, pursuant to that Purchase and Sale Agreement identified on Exhibit "B."

**1.67 Net Profits.** Revenues received less Expenses paid, less an operating reserve of $35,000.

**1.68 Ocala Farm.** The real property owned by Stonewall Farm Ocala, LLC, and on which the Debtors currently conduct the Debtors' Horse Breeding Business, including all improvements thereto.

**1.69 Ocala Farm Remaining Proceeds.** Any net sale proceeds from the liquidation of the Ocala Farm that remain after payment of the Allowed Claims in the SWF Ocala Bankruptcy Case.

**1.70 Other Lawsuits.** Shall mean the pending lawsuits styled as follows: (a) *Stone Wall Acquisition LLC v. 1st Choice Breeding, LLC, et al.,* Case No.: 5:10-cv-616-Oc-32TEM (United States District Court, Middle District of Florida), and (b) *Fifth Third Bank v. Audrey Haisfield, et al.*, Civil Action No. 11-CI-735 (Commonwealth of Kentucky, Fayette Circuit Court).

**1.71 Person.** An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit, all as defined in Bankruptcy Code Section 101(41).

**1.72 Personal Property.** All of the Haisfield Debtors' assets listed on the attached Exhibit "D."

**1.73 Petition Date.** Shall mean the Haisfield Petition Date and/or the SWF Ocala Petition Date, as applicable.

**1.74 Plan.** This plan of liquidation, and all exhibits and schedules annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

**1.75 Plan Proponent.** The Debtors and the Committee.

**1.76 Priority Claim.** Any pre-petition claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

**1.77 Priority Tax Claim.** Any pre-petition claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.78 Professional.** A Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with Section 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.79 Professional Claim.** A Claim of (a) a Professional retained in the Chapter 11 Cases pursuant to a Final Order in accordance with Section 327 of the Bankruptcy Code or otherwise, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date or (b) a Professional which seeks compensation and reimbursement pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.80 Progeny.** All horses born of any mare by reason of impregnation resulting under the exercise of the MDO Breeding Right occurring by reason of the exercise of the MDO Breeding Right with respect to the breeding seasons in 2013 and thereafter.

**1.81 Proof of Claim.** Any proof of claim filed with the Bankruptcy Court with respect to the Debtors, or any of them, pursuant to Bankruptcy Rules 3001 or 3002.

**1.82 Pro Rata.** Proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Interest to the amount of the Allowed Claim or Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Interests of the Class in which the particular Allowed Claim or Interest is included to the amount of all Allowed Claims or Interests of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim or Interest shall not exceed 100% of the amount of the Allowed Claim or Interest.

**1.83 Randy.** Randy Haisfield.

**1.84 Remaining Assets.** All Assets of the Haisfield Debtors, or any of them, including any interest each has in the Breeder Awards, Cash, the MDO Breeding Right (including through the transfer of all interests in Medaglia I, LLC), the mare share agreement with Robert West Jr. and Millford Farm, the Litigation Claims, and the Progeny, but less and except the Retained Assets, the Personal Property, the Exempt Property, and the Ocala Farm (but the Remaining Assets include the Ocala Farm Remaining Proceeds pursuant to Section 6.1.3 of the Plan).

**1.85 Retained Assets.** All of the assets of the Haisfield Debtors described on the attached Exhibit "C."

**1.86 Revenues.** The total amount of monies received by and generated from (1) the Debtors' Horse Breeding Business, including without limitation the Haisfield Debtors' operation and control of the Retained Assets, (2) any entity in which the Haisfield Debtors have, separately or together, an ownership interest, whether direct or indirect, and (3) any other source, including any sums received for goods sold or services provided (*e.g.*, boarding fees, stud or other breeding fees received, breeder awards, sale of horses, management fees, horse training, commissions), race winnings, and for exchange of assets or interests, membership distributions, or other sources of revenue of any kind or character.

**1.87 Revenue Term.** The three-year period commencing on and following the Effective Date, together with the following, additional one-year if permissibly extended upon notice by the Haisfield Debtors pursuant to Section 14.8 of the Plan.

**1.88 Richard.** Richard Haisfield.

**1.89 Richard/Audrey Contributed Funds.** Shall have the meaning established in Section 7.1.9 of the Plan.

**1.90 Scheduled.** Set forth on the Schedules.

**1.91 Schedules.** The Schedules of Assets and Liabilities Filed by the respective Debtors in their respective Chapter 11 Cases in accordance with Bankruptcy Code Section 521 and Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Bankruptcy Rule 1009.

**1.92 Secured Claim.** A Claim secured by a Lien on Collateral which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Haisfield Creditors Trustee or Liquidating Agent shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**1.93 Settlement Agreement**. The Settlement Agreement entered into by and among Marc, Randy, and Lisa, and their respective Controlled Entities, the SWF Ocala Debtor, and the Committee on or around January 12, 2017.

**1.94 SWF Ocala Bankruptcy Case.** Shall mean the Chapter 11 bankruptcy case of Stonewall Farm Ocala, LLC, currently styled *In re Stonewall Farm Ocala, LLC; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Case No. 3:15-bk-03677-PMG*.

**1.95 SWF Ocala Debtor.** Shall mean Stonewall Farm Ocala, LLC.

**1.96 SWF Petition Date.** August 17, 2015.

**1.97 Tracy.** Tracy Eggleston.

**1.98 Tracy/Michael Contributed Funds.** Shall have the meaning established in Section 7.1.10 of the Plan.

**1.99 Trust Estate or Trust Assets.** Shall mean the Breeder Awards, Contributed Horses, Marc/Randy/Lisa Contributed Funds (and any other interest contributed by Marc, Randy, Lisa, or any of their respective Controlled Entities, pursuant to the Settlement Agreement), MDO Breeding Right (including through the transfer of all interests in Medaglia I, LLC), Remaining Assets, Richard/Audrey Contributed Funds, Progeny, Tracy/Michael Contributed Funds, which shall be irrevocably assigned, transferred and conveyed to the Haisfield Creditors Trust as of the Effective Date of the Plan, together with all proceeds of such assets and all net income earned on the foregoing.

**1.100 Unimpaired.** When used with reference to a Claim or an Interest, "Unimpaired" shall have the meaning ascribed to it in Bankruptcy Code Section 1124.

**1.101 United States Trustee.** The United States Trustee appointed under Section 581 (a)(3) of title 28 of the United States Code to serve in the Middle District of Florida.

**1.102 Unsecured Claim.** A Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, an Administrative Claim or Professional Claim.

## C. <u>Rules of Interpretation</u>

1. In the event of an inconsistency, the provisions of the Plan shall control over the contents of the Disclosure Statements or the Haisfield Creditors Trust Agreement. The provisions of the Confirmation Order shall control over the provisions of the Plan.

2. For the purposes of the Plan:

(a) any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or schedule, as it may have been or may be permissibly amended, modified or supplemented as of or after the Effective Date;

(b) unless otherwise specified, all references in the Plan to "Articles," "Sections," and "Exhibits," are references to Articles, Sections, and Exhibits of or to the Plan;

(c) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(d) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect interpretations of the Plan;

(e) the rules of construction set forth in Bankruptcy Code Section 102 shall apply, except to the extent inconsistent with the provisions of this Article of the Plan; and

(f) the word "including" means "including without limitation."

3. Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as reasonably practicable thereafter.

4. All Schedules to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are Filed.

5. Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

## D. <u>Computation of Time</u>

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1 Administrative Claims.** No Administrative Expense shall receive a distribution under this Plan except to the extent that it is an Allowed Administrative Expense. Except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment, or as otherwise set forth in the Plan, and subject to the Administrative Claims Bar Date set forth in the Section 2.4 of the Plan, the Haisfield Creditors Trustee shall pay each Allowed Administrative Expense in full, in Cash, on the later of (i) one (1) Business Day following the Effective Date or a soon as practicable thereafter, (ii) within ten (10) Business Days after the date such Administrative Expense becomes an Allowed Administrative Expense, and (iii) the date such Allowed Administrative Expense becomes due according to its terms; *provided, however*, that Professional Claims shall be paid in accordance with Section 2.3 of the Plan. Notwithstanding the foregoing, any Allowed Administrative Expenses representing obligations incurred in the ordinary course of post-petition operation of the Haisfield Creditors Trust, or that have been expressly authorized by the Bankruptcy Court or this Plan, shall be paid in full or performed by the Haisfield Creditors Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**2.2 Statutory Fees.** The Debtors, as to their respective Chapter 11 Cases, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the Confirmation Order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period. The Haisfield Creditors Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. 1930(a)(6) based upon all disbursements of the Haisfield Creditors Trust for post-confirmation periods within the time period set forth in 28 U.S.C. 1930(a)(6), until the earlier of the closing of the Chapter 11 Cases by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing the Chapter 11 Cases or converting the Chapter 11 Cases to another chapter under the Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the Cash disbursements for the relevant period.

**2.3 Professional Claims.** Immediately prior to the Effective Date, or on such other terms as a Professional may agree, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims, as approved by the Bankruptcy Court. On or prior to the Administrative Claims Bar Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date.

**2.4 Deadline for Filing Administrative Claims**. Other than with respect to Administrative Claims for which the Bankruptcy Court previously has established a Bar Date, any and all requests for payment or proofs of Administrative Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date, must be Filed and served on the Haisfield Creditors Trustee and the Committee, their respective counsel, and the U.S. Trustee no later than the Administrative Claims Bar Date.

Objections to any such Administrative Claims must be Filed and served on the claimant no later than twenty-one (21) days after the Administrative Claims Bar Date. The Debtors and the Haisfield Creditors Trustee, as applicable, shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims. In the event the Debtors or the Haisfield Creditors Trustee are unable to resolve any of the disputed Administrative Claims, such unresolved disputes will be heard and determined by the Bankruptcy Court.

Notwithstanding the foregoing, the Administrative Expense Bar Date shall not apply to post-petition, ordinary course of trade obligations and post-petition payroll obligations incurred in the ordinary course of the Haisfield Creditors Trustee's post-petition business occurring after the Petition Date, and post-petition obligations expressly authorized by the Bankruptcy Court or this Plan, for which no Administrative Expense Bar Date shall apply.

**2.5 Priority Tax Claims.** Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment, the Haisfield Creditors Trustee shall pay each holder of an Allowed Priority Tax Claim the amount of such Allowed Priority Tax Claim in full, in Cash, within ten Business Days after the later of (a) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (b) such date as the Haisfield Creditors Trust shall have adequate Available Cash to pay such Allowed Priority Tax Claims in full or Pro Rata. No Priority Tax Claim shall receive a distribution under this Plan except to the extent that it is an Allowed Priority Tax Claim.

**2.6 Other Priority Claims.** Except to the extent that the holder of an Allowed Priority Claim agrees to a different treatment, the Haisfield Creditors Trustee shall pay each holder of an Allowed Priority Claim the amount of such Allowed Priority Claim in full, in Cash, within ten Business Days after the later of (a) the date such Priority Claim becomes an Allowed Priority Claim, and (b) such date as the Haisfield Creditors Trust shall have adequate Available Cash to pay such Priority Claim in full or Pro Rata. No Priority Claim shall receive a distribution under this Plan except to the extent that it is an Allowed Priority Claim.

## ARTICLE 3
## SWF OCALA BANKRUPTCY CASE

### A. Separate Administration

The SWF Ocala Bankruptcy Case will not be substantively consolidated with the Haisfield Bankruptcy Case, but will be separately administered by the Liquidating Agent. Although these Chapter 11 Cases will be separately administered, they will proceed on parallel paths. The sole asset that will be administered in the SWF Ocala Bankruptcy Case is the Ocala Farm. The Ocala Farm will be liquidated and the net sale proceeds will be paid to the Allowed Claims of the Creditors of the SWF Ocala Debtor in the SWF Ocala Bankruptcy Case as provided herein. The Ocala Farm Remaining Proceeds will be contributed to the Haisfield Creditors Trust for administration by the Haisfield Creditors Trustee in the Haisfield Bankruptcy Case. All other Assets of the SWF Ocala Debtor's Estate will be contributed to the Haisfield Creditors Trust in satisfaction of the Committee's general unsecured claim against the SWF Ocala Debtor's Estate except those Assets identified on Exhibit "C," which shall be conveyed and contributed to the Debtors for their operation of the Debtors' Horse Breeding Business.

## B. Classification and Treatment of Classified Claims and Interests

**3.1 General.** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the SWF Ocala Bankruptcy Case. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as set forth in Article 2 above.

**3.2 Classification**.

3.2.1 Class SWF-1**.** The Allowed Secured Claim of Carl and Joan Bowling. The Class SWF-1 Claim is secured by a first priority mortgage lien against the Ocala Farm.

3.2.2 Class SWF-2**.** The Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck. The Class SWF-2 Claim is secured by a second priority mortgage lien against the Ocala Farm.

3.2.3 Class SWF-3. The Allowed Claims of General Unsecured Creditors of the SWF Ocala Debtor.

3.2.4 Class SWF-4. The Allowed Claim of the Committee against the SWF Ocala Debtor.

3.2.5 Class SWF-5. The Allowed Unsecured Claim of Stonewall Phoenix, LLC.

3.2.6 Class SWF-6. The equity Interests in the SWF Ocala Debtor.

## C. Identification of Classes of Claims and Interests Impaired and Not Impaired

**3.1 Unimpaired Classes of Claims and Interests.** No classes of Claims or Interests are Unimpaired under the Plan.

**3.2 Impaired Classes of Claims and Interests.** Classes SWF-1, SWF-2, SWF-3, SWF-4, SWF-5, and SWF-6 are Impaired by virtue of Section 1124 of the Bankruptcy Code. Votes from holders of Class SWF-1, Class SWF-2, Class SWF-3, and Class SWF-4 will be solicited. Classes SWF-5 and SWF-6 will receive no distribution under the Plan; therefore, Classes SWF-5 and SWF-6 are conclusively presumed to reject the Plan.

## D. Provisions for the Treatment of Impaired Claims and Interests

**3.1 Summary**. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the

Plan. Administrative Claims and Priority Claims have not been classified and are excluded from the following Classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. The SWF Ocala Debtor shall receive credit for all payments made on account of Allowed Secured Claims during the pendency of the Chapter 11 Cases.

**3.2 Classification and Treatment.**

3.2.1 **Class SWF-1 (Allowed Secured Claim of Carl and Joan Bowling)**. Class SWF-1 consists of the Allowed Secured Claim of Carl and Joan Bowling. Carl and Joan Bowling shall retain their mortgage lien against the Ocala Farm in its existing priority. The Allowed Secured Class SWF-1 Claim shall accrue interest after the Petition Date at the contract, non-default interest rate as provided in the Class SWF-1 Claim loan documents. In full satisfaction of the Class SWF-1 Claim, the Class SWF-1 Claim will be paid in full upon the closing of the sale of, and from the net sale proceeds of, the Ocala Farm by the Liquidating Agent.

3.2.2 **Class SWF-2 (Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck)**. Class SWF-2 consists of the Allowed Secured Claim of Peter Van Rosbeck and Karen A. Rosbeck. Peter Van Rosbeck and Karen A. Rosbeck shall retain their mortgage lien against the Ocala Farm in its existing priority. The Allowed Secured Class SWF-2 Claim shall accrue interest after the SWF Ocala Petition Date at the contract, non-default interest rate as provided in the Class SWF-2 Claim loan documents. In full satisfaction of the Class SWF-2 Claim, the Class SWF-2 Claim will be paid in full upon the closing of the sale of, and from the net sale proceeds of, the Ocala Farm by the Liquidating Agent, after first the payment in full of the Class SWF-1 Claim.

3.2.3 **Class SWF-3 (Allowed General Unsecured Claims)**. Class SWF-3 consists of all Allowed General Unsecured Claims of the SWF Ocala Debtor. Holders of Allowed Class SWF-3 General Unsecured Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for their Allowed Class SWF-3 General Unsecured Claims, their Pro Rata share on account of their Allowed Class SWF-3 General Unsecured Claims of the net sale proceeds of the Ocala Farm by the Liquidating Agent, after first the payment in full of the Class SWF-1 Claim and Class SWF-2 Claim. Class SWF-3 Claims may be subject to dispute or objection and shall receive no distribution until such objection or dispute is resolved by Final Order.

3.2.4 **Class SWF-4 (The Allowed Claim of the Committee against the SWF Ocala Debtor)**. Class SWF-4 consists of the Allowed Claim of the Committee against the SWF Ocala Debtor's Estate. In full satisfaction of the Class SWF-4 Claim all Assets of the SWF Ocala Debtor's Estate, with the exception of the Ocala Farm and those identified on Exhibit "C," shall be contributed to the Haisfield Creditors Trust.

3.2.5 **Class SWF-5 (The Unsecured Claim of Stonewall Phoenix, LLC)**. Class SWF-5 consists of the Allowed Unsecured Claim of Stonewall Phoenix, LLC. The holder of the Allowed Class SWF-5 Claim will receive no distribution under the Plan.

3.2.6 **Class SWF-6 (The Equity Interests in SWF Ocala)**. Class SWF-6 consists of holders of the equity Interests in the SWF Ocala Debtor. Holders of Class SWF-6 Claims will receive no distribution under the Plan.

**3.3 Reservation of Rights to Object to Claims or Interests.** Neither the Liquidating Agent, the SWF Ocala Debtor, nor the Committee has reviewed the validity or amount of the Claims and Interests for which a Proof of Claim has been filed in the SWF Ocala Bankruptcy Case. Accordingly, except as otherwise set forth herein, all rights to amend the SWF Ocala Debtor's Schedules and to object to such Claims or Interests are reserved by the Liquidating Agent, the SWF Ocala Debtor, and the Committee, notwithstanding the right of the holder of such Claim or Interest to vote on this Plan.

## ARTICLE 4
## HAISFIELD BANKRUPTCY CASE

### A. Separate Administration

The Haisfield Bankruptcy Case will not be substantively consolidated with the SWF Ocala Bankruptcy Case, but will be separately administered by the Haisfield Creditors Trustee. Although these Chapter 11 Cases will be separately administered, they will proceed on parallel paths. The sole asset that will be administered in the SWF Ocala Bankruptcy Case is the Ocala Farm. The Ocala Farm will be liquidated and the net sale proceeds will be paid to the Allowed Claims of the Creditors of the SWF Ocala Debtor in the SWF Ocala Bankruptcy Case as provided herein. The Ocala Farm Remaining Proceeds will be contributed to the Haisfield Creditors Trust for administration by the Haisfield Creditors Trustee in the Haisfield Bankruptcy Case. All other Assets of the SWF Ocala Debtor's Estate will be contributed to the Haisfield Creditors Trust in satisfaction of the Committee's general unsecured claim against the SWF Ocala Debtor's Estate except those Assets identified on Exhibit "C," which shall be conveyed and contributed to the Debtors for their operation of the Debtors' Horse Breeding Business.

### B. Classification and Treatment of Classified Claims and Interests

**4.1 General.** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the Haisfield Bankruptcy Case. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as set forth in Article 2 above.

**4.2 Classification**.

4.2.1 **Class H-1 (BMW Financial Services)**. Class H-1 consists of the Allowed Secured Claim of BMW Financial Services which arises from a pre-petition

purchase money loan for the purchase of a 2009 BMW X3 Wagon. The Class H-1 Claim is secured by a purchase money, first priority lien on the motor vehicle.

4.2.2 **Class H-2 (The Greatness Syndicate)**. Class H-2 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a prepetition purchase money loan for the acquisition of a 75% interest in the stallion "Greatness."

4.2.3 **Class H-3 (Allowed General Unsecured Claims)**. Class H-3 shall consist of the Allowed Claims of General Unsecured Creditors of the Haisfield Debtors.

4.2.4 **Class H-4 (The Haisfield Debtors)**. Class H-4 shall consist of Richard and Audrey.

## C. Identification of Classes of Claims and Interests Impaired and Not Impaired

**4.1 Unimpaired Classes of Claims and Interests.** No classes of Claims or Interests are Unimpaired under the Plan.

**4.2 Impaired Classes of Claims and Interests.** Classes H-1, H-2, H-3, and H-4 are Impaired by virtue of Section 1124 of the Bankruptcy Code. Votes from holders of Class H-1, Class H-2, Class H-3, and Class H-4 will be solicited.

## D. Provisions for the Treatment of Impaired Claims and Interests

**4.1 Summary**. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Administrative Claims and Priority Claims have not been classified and are excluded from the following Classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. The Haisfield Debtors shall receive credit for all payments made on account of Allowed Secured Claims during the pendency of the Chapter 11 Cases.

**4.2 Classification and Treatment.**

4.2.1 **Class H-1 (BMW Financial Services)**. Class H-1 consists of the Allowed Secured Claim of BMW Financial Services which arises from a pre-petition purchase money loan for the purchase of a 2009 BMW X3 Wagon. The Class H-1 Claim is secured by a purchase money, first priority lien on the motor vehicle. In full satisfaction of BMW's Allowed Secured Claim, BMW shall retain its lien on the motor vehicle and on the first day of the month following the Effective Date, the Haisfield Debtors shall commence monthly payments to BMW on account of the Class H-1 Claim based upon a three (3) year amortization and maturity with interest at a fixed rate of five percent (5%), until the remaining indebtedness thereunder is paid in full. The Haisfield Debtors may prepay the entire Class H-1 Claim at any time without penalty.

4.2.2 **Class H-2 (The Greatness Syndicate)**. Class H-2 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a prepetition purchase money loan for the acquisition of a 75% interest in the stallion "Greatness." The Class H-2 Claim is subject to set-off claims of the Haisfield Debtors against The Greatness Syndicate for unpaid expenses related to the maintenance, room and board for the stallion "Greatness." After applying all set-offs as of the Effective date, the Greatness Syndicate will retain its lien on Greatness for the balance of its allowed claim. Commencing on the first day of the first full calendar quarter following the Effective Date, the Haisfield Debtors will commence payments to the Greatness Syndicate on its allowed claim after set-off based upon a three year amortization and maturity with interest at five percent (5%) per annum. The Haisfield Debtors may set-off from any quarterly payment any current amounts owed by The Greatness Syndicate for the maintenance, room and board for "Greatness."

4.2.3 **Class H-3 (Allowed General Unsecured Claims)**. Class H-3 consists of all Allowed General Unsecured Claims of the Haisfield Debtors. Holders of Allowed Class H-3 General Unsecured Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for their Allowed Class H-3 General Unsecured Claims, a beneficial interest in and periodic distributions from the Haisfield Creditors Trust equal to their Pro Rata share on account of their Allowed Class H-3 General Unsecured Claims to be paid by the Haisfield Creditors Trust on dates to be determined in the reasonable discretion of the Haisfield Creditors Trustee. Class H-3 Claims may be subject to dispute or objection and shall receive no distribution until such objection or dispute is resolved by Final Order.

4.2.4 **Class H-4 (Haisfield Debtors)**. Class H-4 consists of the interests of the Haisfield Debtors. The Haisfield Debtors will receive distribution of, or shall retain, only the Retained Assets, the Personal Property, and the Exempt Property, subject to the terms and conditions of the Plan.

**4.3 Reservation of Rights to Object to Claims or Interests.** Neither the Haisfield Creditors Trustee, the Haisfield Debtors, nor the Committee has reviewed the validity or amount of the Claims and Interests for which a Proof of Claim has been filed in the Haisfield Bankruptcy Case. Accordingly, except as otherwise set forth herein, all rights to amend the Haisfield Debtors' Schedules and to object to such Claims or Interests are reserved by the Haisfield Creditors Trustee, the Haisfield Debtors, and the Committee notwithstanding the right of the holder of such Claim or Interest to vote on this Plan.

## ARTICLE 5
## TREATMENT OF EXECUTORY CONTRACTS

**5.1 Rejection.** Except for those executory contracts identified and set forth on Exhibit "B," that are assumed pursuant to this Plan, if any, all executory contracts and unexpired leases of any Debtor shall be rejected pursuant to Section 365 of Bankruptcy Code; *provided, however*, that neither the inclusion of a contract or lease on Exhibit "B" hereto nor anything contained in this Article 5 shall constitute an admission by the Debtor(s) that such contract or lease is an executory contract or that the Debtors or their successors and assigns, including, but not limited to, the Haisfield Creditors Trust, has any liability thereunder. To the extent any loan

agreement pursuant to which any Debtor is a lender is deemed to be an executory contract within the meaning of Section 365 of the Bankruptcy Code, rejection of such loan agreement shall not, by itself, eliminate the borrower's obligations thereunder or cause any Debtor's Liens, security interests or ownership rights to be released or extinguished. For the avoidance of any doubt, this Section 5.1 shall apply to any and all contracts or engagements the Debtor(s) may have with professionals retained prepetition, including, but not limited to, attorneys, auditors and accountants, but shall specifically exclude the Haisfield Debtors' retention agreement with Baker Hostetler as Haisfield Debtors' counsel in the Haisfield bankruptcy case.

**5.2 Approval of Rejection; Rejection Damages Claims Bar Date.** The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts under Section 5.1 above pursuant to Bankruptcy Code Section 365 as of the Effective Date. Any Claim for damages arising from any such rejection must be Filed within thirty days after service of the notice of the entry of the Confirmation Order, or such Claim shall be forever barred, shall not be enforceable against the Debtors, their Estates, the Haisfield Creditors Trust, the Haisfield Creditors Trustee, the Committee, or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

## ARTICLE 6
## MEANS FOR EXECUTION AND IMPLEMENTATION
## OF THE SWF OCALA DEBTOR'S PLAN

**6.1 The Ocala Farm.**

6.1.1 *Assignment of Interests in SWF Ocala Debtor*. Each of Richard, Audrey, and Marc, either directly or through any entity they control, shall relinquish and convey to the Haisfield Creditors Trustee, for the benefit of the Haisfield Creditors Trust, their full interest, whether or not owned directly or through an entity (which interest may be the subject of dispute in the Adversary Proceeding), in Stonewall Farm Ocala, LLC, and the Ocala Farm, including any interest they may have, directly or indirectly, in the net proceeds from the sale of the Ocala Farm.

6.1.2 *Sale of the Ocala Farm*. Upon and following the Effective Date, the Liquidating Agent will be exclusively authorized to market and sell the Ocala Farm by private sale or private or public auction pursuant to the terms of the Plan. The Ocala Farm shall be marketed for sale by such real estate agent or agents as shall be selected in the absolute and sole discretion of the Liquidating Agent. The Liquidating Agent shall have eighteen (18) months from the Effective Date of the Plan within which to market and to enter into a binding contract for the sale of the Ocala Farm. The Haisfield Debtors shall not be present for any showings of the Ocala Farm. The Liquidating Agent or real estate agent shall provide at least 24 hours advance notice of a showing, unless such shorter time is agreed to by the Haisfield Debtors. Notice of a showing is deemed effective when the Liquidating Agent or real estate agent emails, texts, or calls Richard at the email address and/or telephone number provided by Richard. If the Liquidating Agent is able to effectuate a sale of the Ocala Farm, the closing of any contract for such sale shall not be scheduled to occur during the period commencing February 15, 2017, and ending on the later of (a) June 15, 2017, or (b) ninety (90) days after such date as the earnest money under such contract becomes non-refundable. If the Liquidating Agent receives an Acceptable Offer, the Liquidating Agent (or its representative) shall notify the Haisfield Debtors

and their counsel of the terms of the Acceptable Offer by email at least twenty-four (24) hours before the Liquidating Agent accepts it. Notice of the Acceptable Offer to the Haisfield Debtors is deemed effective when the Liquidating Agent (or its representative) emails Richard at prestigestallions@gmail.com or at such other email address provided to the Liquidating Agent by Richard. Notice of the Acceptable Offer to counsel for the Haisfield Debtors is deemed effective when the Liquidating Agent (or its representative) emails Jimmy D. Parrish, Esq., at jparrish@bakerlaw.com, or at such other email address of counsel provided to the Liquidating Agent by Richard. The Liquidating Agent shall also consider, but shall have no obligation to accept, any offer from the Haisfield Debtors if such an offer is made. The Haisfield Debtors shall vacate the Ocala Farm on or before the closing date of such contract. If the Liquidating Agent is unable to enter into a binding contract for sale of the Ocala Farm consistent with the foregoing requirements within eighteen (18) months following the Effective Date, then the Liquidating Agent shall with all deliberate speed sell the Ocala Farm at a public auction with no reserve, unless the Liquidating Agent determines, in its sole discretion, that continued marketing and a private sale of the Ocala Farm is in the best interest of the Beneficiaries.

6.1.3 *Proceeds of the Ocala Farm*. The net proceeds from the sale of the Ocala Farm shall be retained for administration by the Liquidating Agent in the SWF Ocala Bankruptcy Case pursuant to the terms of the Plan, including Article 3, with the Ocala Farm Remaining Proceeds to be contributed to the Haisfield Creditors Trust for administration by the Haisfield Creditors Trustee under the terms of the Haisfield Creditors Trust.

6.1.4 *Stay of Ocala Farm Foreclosure*. Upon and following the Effective Date the state court foreclosure action styled *Carl Bowling and Joan Bowling v. Stonewall Farm Ocala, LLC, et al.*, Case No.: 422015 CA 000300A XXXXX, currently pending in the Circuit Court in and for Marion County, Florida, shall remain stayed in order to permit the orderly liquidation of the Ocala Farm as set forth in the Plan.

6.1.5 *Costs and Expenses of the Liquidating Agent*. All costs and expenses incurred by the Liquidating Agent shall be the obligation of the SWF Ocala Debtor and shall be payable from the proceeds of the sale of the Ocala Farm pursuant to the provisions of Section 326 of the Bankruptcy Code.

6.1.6 *Compensation of the Liquidating Agent*. Compensation of the Liquidating Agent shall be upon such terms as the Liquidating Trust and the Haisfield Creditors Trustee agree and shall be payable from the sale proceeds of the Ocala Farm.

6.1.7 *Resignation and Removal of the Liquidating Agent*. The Liquidating Agent may resign or be removed by the same process described in Section 7.1.20 of the Plan.

# ARTICLE 7
# MEANS FOR EXECUTION AND IMPLEMENTATION OF THE HAISFIELD DEBTORS' PLAN

## 7.1 The Haisfield Creditors Trust.

7.1.1 *Establishment of the Haisfield Creditors Trust*. Prior to or on the Effective Date, the Haisfield Debtors shall execute the Haisfield Creditors Trust Agreement and take all steps necessary to establish the Haisfield Creditors Trust.

7.1.2 *Purpose of the Haisfield Creditors Trust*. The Haisfield Creditors Trust is being established for the sole purpose of collecting, liquidating, and/or managing the Trust Assets contributed under this Plan to the Haisfield Creditors Trust and distributing the proceeds of the Trust Assets as identified in and prescribed by this Plan. The Haisfield Creditors Trust shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Haisfield Creditors Trust. Unless otherwise required by law, it is intended that all parties shall treat the Haisfield Creditors Trust as a liquidating trust for all federal income tax purposes.

7.1.3 *The Haisfield Creditors Trust*. Holders of Allowed Claims against the Haisfield Debtors' Estate, to the extent not paid incident to and as a condition of confirmation of the Plan, will become beneficiaries of the Haisfield Creditors Trust, a creditors trust to be formed on the Effective Date of the Plan in substantially the form as attached hereto as Exhibit "A", which will be managed by an independent third party as the Haisfield Creditors Trustee, pursuant to the terms of the Haisfield Creditors Trust Agreement that will be prepared prior to the Effective Date of the Plan by counsel for the Committee with guidance from the Committee, the Debtors, and holders of allowed unsecured claims. The primary purpose of the Haisfield Creditors Trust will be to collect, liquidate, and/or manage the Trust Assets contributed under this Plan to the Haisfield Creditors Trust and distributing the proceeds thereof in the priority of their interests as established by the Plan. The Haisfield Creditors Trustee shall be selected by and in the sole discretion of the Committee and shall act as the trustee of the Haisfield Creditors Trust, which shall set forth the terms of his service and duties under the Haisfield Creditors Trust Agreement. Upon the Effective Date of the Plan, all of the Trust Assets shall be deemed transferred to the Haisfield Creditors Trust.

7.1.4 *Contribution of Remaining Assets to the Haisfield Creditors Trust*. On the Effective Date of the Plan, the Debtors shall transfer all of their respective Remaining Assets to the Haisfield Creditors Trust, which shall contribute such Remaining Assets to the Haisfield Creditors Trust pursuant to the terms of the Haisfield Creditors Trust Agreement. All Remaining Assets shall be transferred and contributed by the Debtors free and clear of all Liens, Claims, interests and encumbrances. Upon such transfers title to all Remaining Assets contributed to the Haisfield Creditors Trust shall vest in the Haisfield Creditors Trust on the Effective Date. For the avoidance of any doubt, following the contribution of the Remaining Assets to the Haisfield Creditors Trust pursuant to this Section 7.1.4 and the Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee shall have standing to pursue all Litigation Claims and to litigate and seek determination of, without limitation, all issues related to the Ocala Farm, the MDO Breeding Right, and the Progeny on behalf of the Haisfield Creditors Trust, subject only to any limitations set forth in this Article 7 or the Haisfield Creditors Trust Agreement.

7.1.5 *MDO Breeding Right*. Each of Richard, Audrey, Marc, and Randy, either directly or through any entity they individually or jointly control, shall relinquish and convey to the Haisfield Debtors' Estate for the benefit of Haisfield Creditors Trust, their full interest, if any, in Medaglia I, LLC. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree that Medaglia I, LLC, is permitted to exercise the MDO Breeding Right pursuant to the Purchase and Sale Agreement identified on Exhibit "B," and each agrees to subordinate any interest each has in the MDO Breeding Right to Medaglia I, LLC, such that Medaglia I, LLC, shall have the exclusive right to exercise the MDO Breeding Right. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree and represent that any part of Medaglia I, LLC's interest in the MDO Breeding Right has not been conveyed and that any purported conveyance of Medaglia I, LLC's interest in the MDO Breeding Right is void. It is anticipated that the Haisfield Creditors Trustee will monetize the MDO Breeding Right either by exercising the MDO Breeding Right directly through Medaglia I, LLC, or selling the membership interests of Medaglia I, LLC, to a third party so that the third party can utilize the MDO Breeding Right. In the event that Darley Stud Management, LLC, disputes the right of Medaglia I, LLC, to exercise the MDO Breeding Right, each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, further agree to cooperate and assist the Debtors' Estates and/or the Haisfield Creditors Trustee, at the sole expense of the Haisfield Creditors Trustee, in utilizing, conveying, and/or monetizing the MDO Breeding Right on behalf of the Debtors' Estates and the Haisfield Creditors Trust. Such cooperation and assistance may include (a) a conveyance of their respective interest in the MDO Breeding Right for the benefit of the Haisfield Creditors Trust, or (b) participation by Richard, Audrey, Marc, or Randy as a member of a limited liability company owned at least fifty percent (50%) by one of them for the benefit of the Haisfield Creditors Trust. Neither Richard, Audrey, Marc nor Randy shall exercise or attempt to exercise the MDO Breeding Right personally or through any entity in which they have an interest unless requested by the Haisfield Creditors Trustee for the benefit of the Haisfield Creditors Trust. Each of Richard, Audrey, Marc, and Randy, individually and on behalf of any entity in which they have an interest, agree that each has no right to any proceeds from the MDO Breeding Right, however monetized; provided, however, that each shall have the non-exclusive right to purchase from the Haisfield Creditors Trust some or all of the MDO Breeding Right on such terms as they and the Haisfield Creditors Trustee may agree. In addition, Richard shall have the right to match any third-party bid regarding the sale of the MDO Breeding Right by the Haisfield Creditors Trustee. Further, each of Richard, Audrey, and Marc may bid against each other if they desire to purchase some or all of the MDO Breeding Right from the Haisfield Creditors Trustee. Each of Richard, Audrey, Marc, and Randy, either directly or through any entity they individually or jointly control, further agree that the MDO Breeding Right for the 2017 breeding season will be exercised on behalf of the Haisfield Debtors' Estate for the benefit of the Haisfield Creditors Trust through the mare Texit in connection with a mare share agreement with Robert West Jr. and Millford Farm.

7.1.6 *Progeny of MDO Breeding Right*. Each of Richard, Audrey, and Marc, either directly or through an entity they control, shall relinquish and convey to the Debtors' Estates for the benefit of the Haisfield Creditors Trust their full interest in the Progeny, whether or not owned directly or through an entity (which interest may be the subject of dispute in the Adversary Proceeding), such that the upon confirmation of the Plan the Haisfield Creditors Trust shall solely own all interests in the Progeny, except Richard and Audrey shall not relinquish and

convey their interest in the four-year-old Baby Magic out of Magical Contender and Marc shall not relinquish and convey his indirect interest in the yearling out of Cabo in 2015 that was sold at auction in January 2016 by the Ocala Breeders Sales Company. The Haisfield Creditors Trust will have exclusive authority to market and sell by private sale or private or public auction the Progeny, or any interests therein, for the benefit of the Haisfield Creditors Trust. Each of Richard, Audrey, and Marc shall have the non-exclusive right to purchase from the Haisfield Creditors Trust some or all of the Progeny on such terms as they and the Haisfield Creditors Trustee may agree.

7.1.7 *The Breeder Awards*. Each of Richard, Audrey, Marc, and Randy, either directly or through an entity they control, shall relinquish and convey to the Haisfield Debtors' Estate for the benefit of the Haisfield Creditors Trust, 100% of their respective interests in the Breeders Awards, if any, owned by them, either directly or through an entity they control, such that upon confirmation of the Plan the Haisfield Creditors Trust shall solely own all interests in the Breeders Awards and shall have the exclusive right to their receipt and collection. The Haisfield Creditors Trustee will have exclusive authority to receive and collect the Breeders Awards for the benefit of the Haisfield Creditors Trust.

7.1.8 *The Debtors' Remaining Non-Exempt and Non-Retained Assets*. The Haisfield Creditors Trustee will have the exclusive right and authority to market and sell by private sale or private or public auction all of the Remaining Assets, but specifically excluding the Exempt Property, the Personal Property, and the Retained Assets. Each of Richard, Audrey, and Marc shall have a non-exclusive right to purchase some or all of the Remaining Assets, on such terms as either of them and the Haisfield Creditors Trustee may agree.

7.1.9 *Richard/Audrey Contributed Funds*. Upon the Effective Date all of the Retained Assets shall be deemed conveyed and transferred to the Haisfield Debtors, free and clear of all liens and encumbrances. The Haisfield Debtors will jointly contribute fifty percent (50%) of all Net Profits earned by the Haisfield Debtors during the Revenue Term from their operation and control of the Retained Assets, the Debtors' Horse Breeding Business, or from any other source, subject to an obligation to contribute no less than a minimum of One Million and One Hundred Thousand Dollars ($1,100,000) to the Haisfield Creditors Trust from such sources during the Revenue Term. The One Million and One Hundred Thousand Dollar ($1,100,000) minimum payment shall be reduced dollar for dollar by any Cash contributed by the Haisfield Debtors from their respective debtor-in-possession accounts prior to the Effective Date as well as the 50% Net Profit contributions made to the Haisfield Creditors Trustee as provided for herein. The Net Profits shall be computed on a monthly basis and reported pursuant to Section of 14.6 of the Plan. The Net Profits shall be paid, 50% to the Haisfield Debtors and 50% to the Haisfield Creditors Trustee, every three months, with such payments to be made to the Haisfield Creditors Trustee no later than the 21st day of the month following the end of each fiscal quarter following the Effective Date. The Debtors agree that they will receive no salary or distribution in connection with the operation of any entity in which the Debtors have, separately or together, an ownership interest, whether direct or indirect, that is conducting any business, including the Controlled Entities, other than the 50% of Net Profits retained by the Haisfield Debtors pursuant hereto. From and after the Effective Date, the Haisfield Debtors shall continue the Debtors' Horse Breeding Business, either at the Ocala Farm or, after such date as it may be sold, at such other location as the Haisfield Debtors may determine is suitable for the Debtors' Horse Breeding

Business. The Debtors' Horse Breeding Business activities shall be monitored by the Haisfield Creditors Trustee and the Haisfield Debtors are not permitted to take on additional debt with respect to the Debtors' Horse Breeding Business without the consent of the Haisfield Creditors Trustee. Further, during the Revenue Term, all stud fees and other revenues of the Debtors' Horse Breeding Business shall be deposited into the operating bank account over which the Haisfield Creditors Trustee shall have online view access.

7.1.10 *Tracy/Michael Contributed Funds*. Pursuant to the Settlement Agreement and Release between the Committee, as representative of the Haisfield Debtors' Estate, and Tracy and Michael, which was approved by the Order Approving Notice of Intent to Compromise Claims Between the Official Committee of Unsecured Creditors and Tracy Eggleston and Michael Haisfield, entered in the Haisfield Bankruptcy Case at Docket No. 278, Tracy and Michael paid the aggregate sum of One Hundred and Thirty-five Thousand and 00/100 Dollars ($135,000.00), which shall be released to and deposited in the Haisfield Creditors Trust on the Effective Date.

7.1.11 *Marc/Randy/Lisa Contributed Funds*. Marc, Randy, and Lisa shall contribute to the Haisfield Creditors Trust funds totaling the aggregate sum of Six Hundred and Seventy Five Thousand Dollars ($675,000.00), which shall be released to the Haisfield Creditors Trust on the Effective Date.

7.1.12 *The Stallions*. Pursuant to the Settlement Agreement, Marc has contributed to the Debtors' Estates, for the benefit of the Haisfield Creditors Trust, the Stallions. The Stallions were sold by public auction on or around February 7, 2017, and all net proceeds of the sale, if any, will be contributed to the Haisfield Creditors Trust on Effective Date.

7.1.13 *Crystal Cove*. Pursuant to the Settlement Agreement, Marc has contributed to the Debtors' Estates, for the benefit of the Haisfield Creditors Trust, the mare known as Crystal Cove. The Committee and, upon the Committee's dissolution, the Haisfield Creditors Trust will have exclusive authority to market and sell Crystal Cove, whether in foal or without, by private sale or private or public auction for the benefit of the Haisfield Creditors Trust.

7.1.14 *Haisfield Creditors Trust Management*. The Haisfield Creditors Trustee, who shall be designated by the Committee in its discretion prior to the Effective Date (but in no event shall the Haisfield Creditors Trustee be any Person who has served on the Committee), shall be vested with the power and authority set forth in the Haisfield Creditors Trust Agreement.

7.1.15 *Haisfield Creditors Trust Structure*. As more fully set forth in the Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee shall oversee and direct the Haisfield Creditors Trust’s operations and activities, including the retention of counsel, decisions to pursue or not pursue Litigation Claims belonging to the Haisfield Creditors Trust, and settlement of any such Litigation Claims belonging to the Haisfield Creditors Trust. In any event, any compromise or settlement of any Litigation Claim shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

7.1.16 *Costs and Expenses of the Haisfield Creditors Trust*. All costs and expenses incurred by the Haisfield Creditors Trust shall be the obligation of the Haisfield

Creditors Trust and shall be payable from the Trust Assets of the Haisfield Creditors Trust. Compensation of the Haisfield Creditors Trustee will be paid from the Trust Assets of the Haisfield Creditors Trust in such amount as calculated under the provisions of Section 326 of the Bankruptcy Code.

7.1.17 *Compensation of Professionals Retained by the Haisfield Creditors Trustee*. Professionals retained by the Haisfield Creditors Trustee shall be entitled to monthly compensation for fees and expenses incurred in carrying out their duties consistent with this Plan and the Haisfield Creditors Trust Agreement. Any such fees and expenses shall be payable from the Trust Assets of the Haisfield Creditors Trust in the ordinary course of business. The Haisfield Creditors Trustee's initial general and litigation counsel shall be Akerman LLP. The Haisfield Creditors Trustee shall provide regular reporting to parties in interest of all fees expended and shall file a report with the Bankruptcy Court prior to entry of a Final Decree that sets forth all funds received, administrative payments made, and creditor distributions made by the Haisfield Creditors Trustee.

7.1.18 *Resignation and Removal of the Haisfield Creditors Trustee*. The Haisfield Creditors Trustee may resign and be discharged from any future obligations and liabilities under the Haisfield Creditors Trust Agreement by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice. The Haisfield Creditors Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Upon any such removal, the removed Haisfield Creditors Trustee shall be entitled to any reimbursement and indemnification set forth in the Haisfield Creditors Trust Agreement which remains due and owing to the Haisfield Creditors Trustee at the time of such removal. If, at any time, the Haisfield Creditors Trustee shall give notice of his intent to resign pursuant to Section 7.7 of the Haisfield Creditors Trust Agreement, or be removed or shall become incapable of acting, counsel to the Haisfield Creditors Trustee shall provide notice thereof to the Bankruptcy Court. The Office of the United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor Haisfield Creditors Trustee for the Haisfield Creditors Trust.

7.1.19 *Continuation of Automatic Stay*. In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtors, the Estates, all Assets of the Debtors' Estates, the Haisfield Creditors Trustee, the Haisfield Creditors Trust, and the Trust Assets until the Final Distribution Date.

**7.2 Dissolution of the Committee.** The Committee shall be dissolved upon the Effective Date of the Plan. In lieu of the Committee, the Liquidating Agent and the Haisfield Creditors Trustee shall have standing to enforce the terms of the Plan until the Debtors' Chapter 11 Cases are closed.

**7.3 Closing of the Chapter 11 Cases.** Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Cases, when all Remaining Assets contributed to the Haisfield Creditors Trust have been liquidated and converted into Cash (other than those Remaining Assets as may be abandoned by the Haisfield Creditors Trust), and

such Cash has been distributed in accordance with the Haisfield Creditors Trust Agreement and this Plan, and the Final Distribution made, the Haisfield Creditors Trustee shall seek a final decree and authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules. At any time prior to the request for a final decree, the Haisfield Debtors or the Trustee of the Haisfield Creditors Trust may petition the Bankruptcy Court to administratively close the case until completion of the payments required in this Plan.

## ARTICLE 8
## POST-CONFIRMATION LITIGATION

**8.1 Transfer and Enforcement of Causes of Action.** Pursuant to Section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, all Litigation Claims are expressly preserved, reserved and retained by the Haisfield Creditors Trust and, after transfer of the Remaining Assets to the Haisfield Creditors Trust pursuant to Section 7.1.4 hereof, the Haisfield Creditors Trustee or other appropriate party in interest including any designee or successor of the Haisfield Creditors Trustee, will have the exclusive right to enforce any and all Litigation Claims and rights of the Debtors that arose before or after the Petition Date (including, but not limited to, the rights and powers of a trustee and debtor-in-possession) against potential targets of the Litigation Claims. Subject only to any limitations set forth in Article 7, or the Haisfield Creditors Trust Agreement, the right to bring all Litigation Claims against any targets is expressly and entirely preserved and retained. Any compromise by the Haisfield Creditors Trustee shall be subject to Bankruptcy Court approval pursuant to Rule 9019.

**8.2 Objections to Claims.** Subject to applicable law, and except as otherwise set forth herein, from and after the Effective Date, the Haisfield Creditors Trustee shall have the authority to litigate to judgment objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Haisfield Creditors Trust Agreement and this Plan. Any compromise of any Claim objection shall be subject to Bankruptcy Court approval. The deadline within which objections to Claims or Interests may be filed shall be one (1) year from the Effective Date; *provided, however*, that such deadline may be extended from time to time upon application to and approval by the Bankruptcy Court.

## ARTICLE 9
## DISTRIBUTIONS

**9.1 Delivery of Distributions in General**. Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the Proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Agent or the Haisfield Creditors Trustee after the date on which any related Proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been Filed and the Liquidating Agent or the Haisfield Creditors Trustee has not received a written notice of a change of address.

**9.2 Cash Payments**. Except as otherwise provided in the Haisfield Creditors Trust Agreement or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be

made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Haisfield Creditors Trustee.

**9.3 Interest on Claims**. Post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

**9.4 No *De Minimis* Distributions**. Other than in the Final Distribution, no payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.

**9.5 Face Amount**. Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the "Face Amount" of a Disputed Claim means the amount set forth on the Proof of Claim, unless no Proof of Claim has been timely Filed or deemed Filed, in which case the Face Amount shall be zero.

**9.6 Undeliverable Distributions**. If the distribution check to any Holder of an Allowed Claim is not cashed within ninety (90) days after issuance by the Liquidating Agent or the Haisfield Creditors Trustee, a stop payment order shall be given with respect to the check and no further distributions shall be made to such holder on account of such Allowed Claim. Such Allowed Claim or Interest shall be discharged and the holder of such Allowed Claim shall be forever barred from asserting such Claim against the SWF Ocala Debtor's Estate or the Haisfield Creditors Trust, the Haisfield Creditors Trustee, the Debtors, their Estates or their respective property. In such cases, any Cash held for distribution on account of such Claim shall remain property of the Haisfield Creditors Trust and be distributed to other Creditors in accordance with the terms of this Plan and the Haisfield Creditors Trust Agreement.

**9.7 Interim Distributions**. Unless otherwise provided in the Plan, the Haisfield Creditors Trustee in his discretion may make periodic distributions to the Beneficiaries entitled thereto in accordance with Section 5.1 of the Haisfield Creditors Trust Agreement.

**9.8 Final Distribution**. The Haisfield Creditors Trustee shall make a final distribution in accordance with Section 5.5 of the Haisfield Creditors Trust Agreement.

**9.9 Disputed Claims Reserves**. The Haisfield Creditors Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Haisfield Creditors Trust Agreement.

**9.10 Compliance with Tax Requirements**. In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Liquidating Agent and the Haisfield Creditors Trust shall comply with all tax withholding and reporting requirements

imposed by any governmental unit, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Agent and the Haisfield Creditors Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE 10
## CONDITIONS PRECEDENT

**10.1 Conditions to Confirmation.** As a condition to entry of the Confirmation Order:

10.1.1 Confirmation Order. The Confirmation Order shall be in form and substance satisfactory to the Committee.

**10.2 Conditions to the Effective Date.** The Plan shall not become effective and the Effective Date shall not occur unless and until:

10.2.1 Confirmation Order. The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Committee and which includes, *inter alia*, a provision that the Haisfield Debtors' discharge may not be granted if they materially breach the provisions of the Plan or the Haisfield Creditors Trust Agreement;

10.2.2 Stay of the Confirmation Order. No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 10.2 are satisfied, or, if permitted, waived; and

10.2.3 Execution of Documents. All documents, instruments and agreements, in form and substance satisfactory to the Committee provided for under this Plan or necessary to implement this Plan, including, without limitation, all required documents to insure an orderly assignment of all ownership interests of the Debtors in the Remaining Assets and Litigation Claims to the Haisfield Creditors Trust, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

**10.3 Termination of Plan for Failure To Become Effective.** If the Effective Date shall not have occurred on or prior to the date that is forty-five (45) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived in writing by the Committee.

**10.4 Waiver of Conditions.** The Committee may waive at its sole discretion any or all of the conditions set forth in this Plan.

**10.5 Notice of Effective Date.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Haisfield Creditors Trustee shall file with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Haisfield Creditors Trustee in his sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective; *provided, however*, that the Haisfield Creditors Trustee shall have no obligation to notify any Person of such fact. The Plan shall be deemed to be effective as of 12:01

a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Haisfield Creditors Trustee's option, by courier, facsimile, or electronic mail) to those Persons who have filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 11
## EFFECT OF CONFIRMATION

**11.1 Jurisdiction of Court.** Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 12 of this Plan.

**11.2 Binding Effect.** Except as otherwise provided in Section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

**11.3 Exculpation.** Except as otherwise specifically provided in this Plan, the Debtors, the Committee, or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or any of such parties' successors and assigns, shall have or incur, and are hereby released from, any Claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.

Notwithstanding any other provision of this Plan, neither any holder of a Claim or Interest, or other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Committee, or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or such parties successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cass, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for such Persons' gross negligence or willful misconduct.

**11.4 Injunctions.** Except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity of

any kind or nature related to the Debtors, the Committee, or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Entity has voted to accept the Plan, and any successors, assigns or representatives of such Entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim against the Committee, the Debtors, or any assets of the Debtors which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Committee, the Debtors, or any assets of the Debtors which such Entity possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Committee, the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released hereby.

**11.5 Channeling Injunction/Bar Order.** All Creditors of the Debtors' Estates shall be precluded and permanently enjoined on and after the Effective Date from pursuing any claims, liens, demands, debts, contracts, causes of action, obligations, liabilities, damages, royalties, and suits in any jurisdiction and anywhere in the world, asserted or unasserted, known or unknown, liquidated or unliquidated, that any Creditor had, has, or could ever have, from the beginning of the world to the date of the Settlement Agreement, against any of the Debtor Releasees, that were, are, or could have been asserted in, or relate in any way to, the Adversary Proceeding, the Chapter 11 Cases, SWF Ocala, the Ocala Farm, or the Debtors' Estates, including, without limitation, all such claims, liens, demands, debts, contracts, causes of action, obligations, liabilities, damages, royalties, and suits asserted in the following suits: *Stone Wall Acquisition LLC v. 1st Choice Breeding, LLC, et al.,* Case No.: 5:10-cv-616-Oc-32TEM (United States District Court, Middle District of Florida) and *Fifth Third Bank v. Audrey Haisfield, et al.*, Civil Action No. 11-CI-735 (Commonwealth of Kentucky, Fayette Circuit Court).

**11.6 Limitation of Liability.** Except as expressly set forth in the Plan, following the Effective Date, neither the Debtors, the Committee, nor any of such parties' employees, advisors, attorneys, professionals or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with this Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct.

**11.7 Cancellation and Release of Existing Indebtedness and Liens.** Except as may otherwise be provided in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, guaranties, invoices, contracts, agreements, and any other documents or instruments evidencing Claims against the Debtors, together with any and all Liens securing same, shall be cancelled, discharged, and released without further act or action by any Person under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors thereunder shall be deemed cancelled, discharged, and released. To

the extent deemed necessary or advisable by the Liquidating Agent or the Haisfield Creditors Trustee, any holder of a Claim shall promptly provide the Liquidating Agent or the Haisfield Creditors Trustee with an appropriate instrument of cancellation, discharge, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge, or release, including the cancellation, discharge, or release of any Lien securing such Claim.

**IRS CIRCULAR 230 NOTICE.** TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS PLAN (INCLUDING ANY EXHIBITS OR ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## ARTICLE 12
## RETENTION OF JURISDICTION

**12.1 Ongoing Bankruptcy Court Jurisdiction.** Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the transfer of the Remaining Assets to the Haisfield Creditors Trust, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including but not limited to jurisdiction to, among other things:

A. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to section 510 of the Bankruptcy Code, any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

B. Hear and determine any and all causes of action and rights of the Debtors that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, Section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Haisfield Creditors Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever, including without limitation all causes of action and rights on account of any and all Litigation Claims defined in Section 1.61 herein (including, but not limited to, all avoidance powers granted to the Debtors, or assertable by the Committee by derivative standing, under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtors' Estate including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state’s law, Federal law or

otherwise), and all matters with respect to the Adversary Proceeding, the MDO Breeding Right, and the Progeny;

C. Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

D. Resolve any matters relating to the assumption, assumption and assignment, or rejection of any executory contract to which any Debtor is a party or with respect to which any Debtor may be liable, including without limitation the determination of whether such contract is executory for the purposes of Section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

E. Enter orders approving the Haisfield Creditors Trust's post-Confirmation sale or other disposition of Trust Assets and real estate, or the Liquidating Agent's sale of the Ocala Farm, pursuant to Sections 363 and 1146(c) of the Bankruptcy Code or otherwise, free and clear of all Liens, Claims and encumbrances;

F. Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Haisfield Creditors Trust Agreement;

G. Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending in the Chapter 11 Cases on the Effective Date;

H. Hear and determine matters concerning state, local or federal taxes in accordance with Sections 346, 505 or 1146 of the Bankruptcy Code;

I. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Haisfield Creditors Trust Agreement, the Plan and the Confirmation Order;

J. Hear and determine any applications by the Haisfield Creditors Trustee to retain one or more professionals to assist the Haisfield Creditors Trust in carrying out his duties and obligations under the Haisfield Creditors Trust Agreement;

K. Resolve any disputes relating to monthly fee invoices for allowance of compensation submitted by the Haisfield Creditors Trustee or his professionals;

L. Hear and determine any matters concerning the enforcement of the provisions of Article 11 of the Plan and any other exculpations, limitations of liability or injunctions contemplated by the Plan;

M. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Haisfield Creditors Trust Agreement, the Plan or the Confirmation Order;

N. Permit the Haisfield Creditors Trustee to the extent authorized pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

O. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Haisfield Creditors Trust Agreement, the Plan or the Confirmation Order;

P. Enforce any injunctions entered in connection with Chapter 11 Cases or relating to the Plan or the Confirmation Order;

Q. Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Haisfield Creditors Trust Agreement or the Plan are enjoined or stayed;

R. Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

S. Order the complete or partial substantive consolidation of any non-Debtor Entity with or into the Haisfield Creditors Trust *nunc pro tunc* to the Petition Date or otherwise;

T. Enter any orders in aid or in extension of prior orders of the Bankruptcy Court; and

U. Enter a final decree closing the Chapter 11 Cases.

## ARTICLE 13
## ACCEPTANCE OR REJECTION OF THE PLAN

**13.1 Persons Entitled to Vote.** Classes SWF-1, SWF-2, SWF-3, SWF-4, and H-1, H-2, H-3, and H-4 are Impaired but will receive a distribution under the Plan. Votes from holders of Class SWF-1, SWF-2, SWF-3, SWF-4, and H-1, H-2, H-3, and H-4 will be solicited. Classes SWF-5 and SWF-6 will receive no distribution under the Plan, and therefore are conclusively presumed to reject that Plan.

**13.2 Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Interests actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least one-half in number of the Allowed Claims or Allowed Interests actually voting in such Class have voted to accept the Plan.

**ARTICLE 14**
**MISCELLANEOUS PROVISIONS**

**14.1 Revocation of the Plan.** Richard and Audrey, individually and on behalf of their Controlled Entities, the SWF Ocala Debtor, and the Committee each agree to the terms set forth herein and that such terms constitute a binding settlement agreement between and among them, effective as of the date of filing the Plan. Richard and Audrey, individually and on behalf of their Controlled Entities, the SWF Ocala Debtor, and the Committee each agree they shall not seek to revoke or withdraw their support for the Plan prior to the Confirmation Date except upon their complete mutual agreement; provided, however, that the Committee may withdraw its support for the Plan in the event that the Debtor breaches any material term set forth herein prior to, or after, the Confirmation Date or the Committee determines, in its sole discretion, that the return to unsecured creditors under the Plan is unreasonable.

**14.2 Full Disclosure of Assets and Litigation Claims.** Prior to the Effective Date the Debtors shall provide affidavits disclosing all of the Debtors' Assets, including all Litigation Claims and potential Litigation Claims, and shall otherwise submit themselves to such discovery and inquiries regarding the Debtors' Assets as the Committee shall require. Failure to disclose any material (worth more than $5,000) asset(s) shall constitute a breach of the terms of the Plan; provided, however, in the event the Debtors fail to disclose an asset worth less than $5,000, the Debtors must still turnover such asset to the Haisfield Creditors Trust.

**14.3 Title to the Debtors' Remaining Assets and Litigation Claims of the Debtors.** Upon the transfer of the Litigation Claims and the Remaining Assets to the Haisfield Creditors Trust on the Effective Date of the Plan, the Haisfield Creditors Trustee shall succeed to all of the Debtors' right, title and interest in the Litigation Claims and the Remaining Assets, and the Debtors will have no further interest in the Remaining Assets, including the Litigation Claims, or the Haisfield Creditors Trust.

**14.4 Retained Assets.** The Haisfield Debtors’ retention of the Retained Assets is conditioned upon the Haisfield Debtors utilizing such assets to earn revenue to apply to the Richard/Audrey Contributed Funds during the Revenue Term and to pay legal fees and expenses. If the minimum amount of Richard/Audrey Contributed Funds required under Section 7.1.9 is not met by the expiration of the Revenue Term, including as it may be permissibly extended under Section 14.8, then all the Haisfield Debtors' right, title and interest in the Retained Assets, together with all assets then owned by the Haisfield Debtors or any entity controlled by them and together with all assets then existing within the Debtors' Horse Breeding Business, with the exception of the Personal Property and the Exempt Property, shall be deemed transferred to the Haisfield Creditors Trust upon the expiration of the Revenue Term.

**14.5 Retained Assets in the Event of Death**. In the event of the death of Richard prior to the end of the Revenue Term, Audrey shall have the option to fulfill the terms of the Plan, or alternatively to surrender the remaining Retained Assets and the operations of the Debtors' Horse Breeding Business to the Haisfield Creditors Trustee, but Audrey shall be permitted to retain the Personal Property and the Exempt Property. In the event the operations are surrendered, the Haisfield Creditors Trustee's recovery shall be limited to recovery of the forfeited assets together with any and all avoidance rights.

**14.6 Monthly Profit/Loss Statements and Annual Pro Formas.** Throughout the Revenue Term, the Haisfield Debtors shall provide to the Haisfield Creditors Trustee and his representatives the following regarding the Debtors' Horse Breeding Business operations:

(1) an annual pro forma submitted on or before each October 1 showing, among other things, projected revenues for the next calendar year, and

(2) monthly operating reports submitted no later than the 21st of the month following the month to which the report pertains in substantially the same form as submitted by the Haisfield Debtors in the Haisfield Bankruptcy Case, together with the following information and documents as an addendum to the extent not otherwise included in the monthly operating reports:

a) statement of Net Profit;

b) itemization and description of all Revenues, including related receipts;

c) itemization and description of all Expenses;

d) a roster of all horses utilized in the Debtors' Horse Breeding Business, including any horse that was bred, boarded, or managed at any point during the reporting period at the Ocala Farm or other location at which the Debtors' Horse Breeding Business is conducted, or was purchased or sold during the reporting period, and for each horse listed on the roster and as applicable, the corresponding stud fees charged, stud fees received, boarding fees, the purchase or selling price and any related commissions, and any other information substantiating or evidencing the revenue generated by, or cost of, the horse;

e) identification of any entity in which the Debtors have, separately or together, an ownership interest, whether direct or indirect, that is conducting any business, including the Controlled Entities, regardless whether the business is conducted on the Ocala Farm or any other property used by the Haisfield Debtors in the Debtors' Horse Breeding Business, and, if requested by the Haisfield Creditors Trustee, a periodic report regarding the value, operations, and profitability of the entity; and

f) a statement of the terms of, or changes regarding, any contracts related to Debtors' Horse Breeding Business operations, including horse breeding fee agreements, breeding rights agreements, syndicate agreements, partnership agreements, breeding revenue rights agreements, ownership agreements, percentage of ownership agreements, stallion management agreements, profit distribution agreements, profit sharing agreements; bill(s) of sale, loan agreements, promissory notes, and insurance policies or agreements.

The Haisfield Debtors agree to provide the Haisfield Creditors Trustee with additional information requested by the Haisfield Creditors Trustee no later than ten days after the request

is made unless an extension of time to respond is granted by the Haisfield Creditors Trustee. In the event the Debtors and Haisfield Creditors Trustee disagree on what constitutes an Expense as defined above versus a discretionary cost that is not essential for the operation of the Debtors' Horse Breeding Business, the Haisfield Creditors Trustee shall submit the disagreement to the Bankruptcy Court for determination.

**14.7 Access to Books and Records.** The Haisfield Debtors shall have a continuing duty to provide the Haisfield Creditors Trustee and his representatives unfettered access to the Haisfield Debtors' books and records, including the records of the Debtors' Horse Breeding Business.

**14.8 Discharge of Haisfield Debtors.** To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan or the Confirmation Order: (a) upon the condition that a minimum of One Million and One Hundred Thousand Dollars ($1,100,000) in Richard/Audrey Contributed Funds are contributed to the Haisfield Creditors Trust in accordance with Section 7.1.9 herein, and effective upon expiration of the Revenue Term, the Confirmation Order shall operate as a discharge of the Haisfield Debtors under Section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Haisfield Debtors and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Haisfield Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the minimum amount of Richard/Audrey Contributed Funds being met (i) all Holders of Claims shall be barred and enjoined from asserting against the Haisfield Debtors and their property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate(s), and (ii) the Haisfield Debtors shall be fully and finally discharged of any liability or obligation on a Disallowed Claim. If, at the end of the initial three-year Revenue Term the Haisfield Debtors have contributed to the Haisfield Creditors Trust at least Seven Hundred Thousand Dollars ($700,000.00) in Richard/Audrey Contributed Funds, then the Haisfield Debtors shall have the option to extend the Revenue Term for the next immediately following one-year period. The Haisfield Debtors shall exercise such option by written notice to the Haisfield Creditors Trustee prior to the expiration of the initial three-year Revenue Term.

**14.9 Consent to Denial of Discharge.** The Haisfield Debtors consent to the denial or revocation of their discharge should they materially breach the terms of the Plan, or should they fail to contribute to the Haisfield Creditors Trust the minimum amount of One Million and One Hundred Thousand Dollars ($1,100,000) in Richard/Audrey Contributed Funds within the Revenue Term, unless such failure to pay is due to circumstances beyond their reasonable control. The Haisfield Debtors specifically reserve their rights as individual debtors to seek modification of the Plan as allowed by the Bankruptcy Code.

**14.10 The Haisfield Debtors—Cooperation; Turnover; Further Assurances.** Each of SWF Ocala, Richard and Audrey shall cooperate with the Haisfield Creditors Trustee and its representatives, and sign and deliver all required documents to insure an orderly assignment of all ownership interests described herein to be transferred and conveyed in order to effectuate the

terms of the Plan. Each of SWF Ocala, Richard and Audrey shall cooperate to provide such reasonable assistance as may be requested by the Haisfield Creditors Trustee to facilitate an orderly and productive sale of the Remaining Assets, in order to promote the maximum net proceeds possible from the sale of such assets. Each of SWF Ocala, Richard and Audrey shall execute, acknowledge and deliver all such deeds, bills of sale, assignments, transfers, conveyances, powers of attorney, assurances, and such additional instruments and other documents as may be required or appropriate to convey and transfer the interests identified herein, and shall take such further actions as may be necessary or appropriate to comply with all of the terms of the Plan and the transactions contemplated hereby.

**14.11 Marc/Randy/Lisa—Cooperation; Turnover; Further Assurances.** Each of Marc, Randy, and Lisa, as applicable, shall cooperate without delay with the Committee, the Liquidating Agent, or the Haisfield Creditors Trustee and their representatives, and sign and deliver all required documents to insure an orderly assignment of all ownership interests described herein to be transferred, conveyed, relinquished, and/or forfeited in order to effectuate the terms of the Settlement Agreement. Each party hereto shall execute, acknowledge and deliver all such deeds, bills of sale, assignments, transfers, conveyances, powers of attorney, assurances, and such additional instruments and other documents as may be required or appropriate to convey and transfer the interests identified in the Settlement Agreement, and shall take such further actions as may be necessary or appropriate to comply with all of the terms of the Settlement Agreement.

**14.12 Release of Claims Against Marc, Randy, and Lisa.** Effective as of the Effective Date, the Debtor Releasors remise, release, and forever discharge each of the Debtor Releasees from all claims, liens, demands, debts, contracts, causes of action, obligations, liabilities, damages, royalties, and suits in any jurisdiction and anywhere in the world, asserted or unasserted, known or unknown, liquidated or unliquidated, that any Debtor Releasor had, has, or could ever have, from the beginning of the world to the date hereof, against any Debtor Releasee, that were, are, or could have been asserted in, or relate in any way to, the Adversary Proceeding, the Chapter 11 Cases, SWF Ocala, the Ocala Farm, or the Debtors' Estates. Effective as of the Effective Date, the Debtor Releasees remise, release, and forever discharge the Debtor Releasors from all claims, liens, demands, debts, contracts, causes of action, obligations, liabilities, damages, royalties, and suits in any jurisdiction and anywhere in the world, asserted or unasserted, known or unknown, liquidated or unliquidated, that any Debtor Releasee had, has, or could ever have, from the beginning of the world to the date hereof, against any Debtor Releasor, that were, are, or could have been asserted in, or relate in any way to, the Adversary Proceeding, the Chapter 11 Cases, SWF Ocala, the Ocala Farm, or the Debtors' Estates.

**14.13 Statute of Limitations.** Richard and Audrey agree that any applicable statute of limitations related to the claims filed in the Haisfield Bankruptcy Case are tolled until such time as the terms of Plan have been fully performed and the minimum of One Million and One Hundred Thousand Dollars ($1,100,000) in Richard/Audrey Contributed Funds are contributed to the Haisfield Creditors Trust.

**14.14 Stay of Adversary Proceeding.** Richard, Audrey, and their respective Controlled Entities each agree that the Adversary Proceeding shall be stayed pending full compliance with the terms of the Plan, upon which date the Adversary Proceeding shall be dismissed with prejudice with respect to them. Marc, Randy, and Lisa, and their respective Controlled Entities,

each agree that the Adversary Proceeding shall be stayed until the date that confirmation of the Plan becomes final and non-appealable, upon which date the Adversary Proceeding shall be dismissed with prejudice with respect to them.

**14.15 Governing Law.** Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

**14.16 No Admissions.** If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Debtors, the Committee, or any other party with respect to any matter set forth therein or herein including, without limitation, liability on any Claim or the propriety of any Claims classification. If the Effective Date does not occur within forty-five (45) days following entry of the Confirmation Order, the Plan will be null and void and of no further effect.

**14.17 Severability of Plan Provisions.** If prior to Confirmation any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Committee, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.18 Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**14.19 Exemption from Certain Transfer Taxes.** Pursuant to Section 1146(c) of Bankruptcy Code, the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, this Plan, including but not limited the vesting, sale, transfer or other disposition of any of the Assets, Trust Assets or parcel of real estate, may not be taxed under any law (state, local or otherwise) imposing a stamp tax, use tax, sales tax, transfer tax or similar tax or fee. Any sale of any Asset, including but not limited to, any Trust Asset or parcel of real estate, occurring before, after or upon the Effective Date shall be deemed to be in furtherance of this Plan and thus subject to the Section 1146(c) exemption.

**14.20 Preservation of Rights of Setoffs.** The Liquidating Agent and the Haisfield Creditors Trustee may, but shall not be required to, set off against any Claim against the

respective Debtors, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the respective Debtors may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the respective Debtors of any such claim that the respective Debtors may have against such holder.

**14.21 Preservation of Rights And Defenses.** Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, (i) any and all rights, Claims, causes of action, defenses, and counterclaims accruing to the Debtors or the Estates (including, without limitation, any and all Litigation Claims) shall remain assets of and vest in the Haisfield Creditors Trust, whether or not litigation relating thereto is pending on the Effective Date and whether or not any such rights, Claims, causes of action, defenses, and counterclaims have been listed in the Schedules or otherwise listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtors, the Committee nor the Haisfield Creditors Trustee waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Estates, (a) whether or not such right, Claim, cause of action, defense or counterclaim has been listed or referred to in the Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtors or the Committee, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense, or counterclaim filed a Proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim in the Schedules, this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, shall in no manner waive, eliminate, modify, release, or alter the Haisfield Creditors Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that the Debtors or the Haisfield Creditors Trust have or may have as of the Confirmation Date. The Haisfield Creditors Trustee may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and counterclaims in its sole discretion in accordance with what is in the best interests, and for the benefit, of the Haisfield Creditors Trust.

**14.22 No Injunctive Relief.** Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**14.23 Non-Business Day.** If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Dated: March 9, 2017.

RICHARD HAISFIELD

By: ______________________________

AUDREY L. HAISFIELD

By: ______________________________

STONEWALL FARM OCALA, LLC,
a Florida limited liability company

By: ______________________________
Richard Haisfield, Manager

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RICHARD HAISFIELD AND AUDREY L. HAISFIELD

By: ______________________________
Joseph M. Engelhart, Chairman

Dated: March 9, 2017.

RICHARD HAISFIELD

By: ______________________________

AUDREY L. HAISFIELD

By: ______________________________

STONEWALL FARM OCALA, LLC,
a Florida limited liability company

By: ______________________________
Richard Haisfield, Manager

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RICHARD HAISFIELD AND AUDREY L. HAISFIELD

By: ______________________________
Joseph M. Engelhart, Chairman

**Exhibit "A"**

**Haisfield Creditors Trust Agreement**

# HAISFIELD CREDITORS TRUST AGREEMENT

***for the***

# HAISFIELD CREDITORS TRUST

**Dated as of ___________, 2017**

***by and between***

**Richard Haisfield and Audrey L. Haisfield,**

***as Debtors-in-Possession,***

**AND**

**___________________________,**

***as Haisfield Creditors Trustee***

# TABLE OF CONTENTS

**Page**

SECTION I. DEFINITIONS .... 2
1.1 Terms Defined in Recitals .... 2
1.2 Terms Defined in the Plan .... 2

SECTION II. AUTHORITY OF AND CERTAIN DIRECTIONS TO HAISFIELD CREDITORS TRUSTEE: DECLARATION OF TRUST .... 3
2.1 Creation of Creditors Trust .... 3
2.2 Purpose of Creditors Trust .... 3
2.3 Title to Litigation Claims of the Debtors .... 3
2.4 Tax Treatment of Transfer of the Remaining Assets to the Creditors Trust .... 4
2.5 Assignment and Assumption of Claims .... 4
2.6 Property in the Creditors Trust .... 4
2.7 Valuation of Trust Assets .... 4
2.8 Continuation of the Automatic Stay .... 5

SECTION III. BENEFICIAL INTERESTS. .... 5
3.1 No Transfer or Exchange .... 5
3.2 No Certification .... 5
3.3 Absolute Owners .... 5
3.4 Means of Payment .... 5
3.5 Amount of Payment .... 6
3.6 Acceptance of Conveyance .... 6
3.7 Title .... 6

SECTION IV. ADMINISTRATION OF TRUST ESTATE. .... 6
4.1 Claims Reserves .... 6
4.2 Administrative Powers of the Haisfield Creditors Trustee .... 7
4.3 Limitations on Haisfield Creditors Trustee; Investments .... 9
4.4 Limitations on Haisfield Creditors Trustee – Bankruptcy Court Approval of Settlements Required .... 9
4.5 Transferee Liabilities .... 9
4.6 Administration of Trust .... 10
4.7 Payment of Expenses and Other Liabilities .... 10
4.8 Payment of U.S .... 10
4.9 Haisfield Creditors Trustee Fees .... 10
4.10 Fiscal Year .... 10
4.11 Reports .... 10

SECTION V. PAYMENTS AND DISTRIBUTIONS. .... 11
5.1 Distributions to Beneficiaries .... 11
5.2 Establishment of the Claim Accounts .... 12
5.3 Distributions from Trust Estate .... 12

5.4 Fractional Distributions ........ 12
5.5 Final Distribution ........ 12
5.6 Termination Date ........ 12

SECTION VI. OTHER DUTIES OF THE HAISFIELD CREDITORS TRUSTEE. ........ 12
6.1 Management of Trust Estate ........ 12
6.2 Tax and Related Matters ........ 13
6.3 No Implied Duties ........ 13

SECTION VII. CONCERNING THE HAISFIELD CREDITORS TRUSTEE. ........ 13
7.1 Acceptance by Haisfield Creditors Trustee ........ 13
7.2 Discretionary Submission of Questions ........ 13
7.3 Liability of the Haisfield Creditors Trustee ........ 14
7.4 Reliance by Haisfield Creditors Trustee ........ 14
7.5 Reliance on Haisfield Creditors Trustee ........ 15
7.6 Indemnification ........ 15
7.7 Resignation and Removal ........ 16

SECTION VIII. SUPPLEMENTS AND AMENDMENTS TO THIS LIQUIDATING TRUST AGREEMENT. ........ 17
8.1 Supplements and Amendments ........ 17
8.2 Haisfield Creditors Trustee, Declining to Execute Documents ........ 17
8.3 Notice of Form of Supplement and Amendments Requiring Vote or Consent ........ 17
8.4 Notice and Effect of Executed Amendment ........ 17

SECTION IX. MISCELLANEOUS. ........ 18
9.1 Title to Trust Estate ........ 18
9.2 Sales of Assets of the Trust Estate ........ 18
9.3 Notices ........ 18
9.4 Severability ........ 18
9.5 Counterparts ........ 18
9.6 Binding Agreement ........ 19
9.7 No Personal Liability of Beneficiaries ........ 19
9.8 Headings ........ 19
9.9 Construction ........ 19
9.10 Governing Law ........ 19
9.11 Construction with the Plan ........ 19
9.12 Subject to Bankruptcy Court's Jurisdiction ........ 19
9.13 Intention of the Parties ........ 19

# HAISFIELD CREDITORS TRUST AGREEMENT

This Haisfield Creditors Trust Agreement, dated as of [___________], 2017, by and between Richard Haisfield and Audrey L. Haisfield (the "Haisfield Debtors") and ____________, as Haisfield Creditors Trustee ("Haisfield Creditors Trustee"), is made and executed in connection with the *First Amended Joint Chapter 11 Plan of Liquidation of Richard Haisfield and Audrey Haisfield and Stonewall Farm Ocala, LLC*, under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), dated _______________, 2017 (as may thereafter be amended, the "Plan"), in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court"), which Plan was confirmed by Order of the Bankruptcy Court dated [_____________], 2017. The Plan provides for the establishment of the liquidating trust evidenced hereby (which liquidating trust shall formally be known as the "Haisfield Creditors Trust") (hereinafter referred to as the "Creditors Trust") to liquidate certain assets and property of the Haisfield Debtors, and to receive and administer distributions from the Estate of the SWF Ocala Debtor, in accordance with the terms and conditions of the Plan and to resolve and realize upon certain of the Haisfield Debtors' rights, claims and causes of action through enforcement by the Haisfield Creditors Trustee.

## R E C I T A L S

**WHEREAS**, May 26, 2011 (the "Haisfield Petition Date") is the petition date established by the Bankruptcy Court in its Order Granting the Motion of Official Committee of Unsecured Creditors of Richard Haisfield and Audrey Haisfield to Consolidate the Debtors' Involuntary Chapter 7 Converted Cases with the Debtors' Voluntary Chapter 11 Case entered on November 30, 2012; and

**WHEREAS**, on April 13, 2012, the United States Trustee for the Middle District of Florida appointed an official committee of unsecured creditors in this case pursuant to Section 1102(a) of the Bankruptcy Code; and

**WHEREAS**, August 17, 2015 (the "SWF Ocala Petition Date"), is the petition date on which the SWF Ocala Debtor filed its petition commencing the SWF Ocala Debtor's Chapter 11 case; and

**WHEREAS**, on [___________], 2017, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"); and

**WHEREAS**, the Plan provides for, among other things: (i) distributions to the holders of Allowed Administrative Claims in accordance with the terms of the Plan and in full satisfaction of such Allowed Administrative Claims, (ii) distributions to the holders of Allowed Priority Claims in accordance with the terms of the Plan and in full satisfaction of such Allowed Priority Claims, and (iii) periodic distributions of Cash from the Creditors Trust to the holders of Allowed Claims against the Haisfield Debtors as specifically provided for herein and in the Plan, which holders comprise one hundred percent (100%) of the holders of beneficial interests of the trust created hereby; and

**WHEREAS**, the Plan provides for the creation of a liquidating trust to hold the Trust Assets in trust for the benefit of all Beneficiaries pursuant to the terms of this Haisfield Creditors Trust Agreement and the Plan; and

**WHEREAS**, this Haisfield Creditors Trust Agreement is executed to establish the Creditors Trust (as defined in Section 2 hereof) and to facilitate implementation of the Plan; and

**WHEREAS**, the primary purpose of the Creditors Trust is to liquidate certain assets and property of the Haisfield Debtors, and to receive and administer distributions from the Estate of the SWF Ocala Debtor, in accordance with the terms and conditions of the Plan and to resolve and realize upon certain of the Haisfield Debtors' rights, claims and causes of action and liquidate the Trust Assets for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d) and the Creditors Trust will not be operated with the objective of continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust; and

**WHEREAS**, the Creditors Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes and the Haisfield Creditors Trustee shall operate and maintain the Creditors Trust in compliance with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service; and

**WHEREAS**, the Beneficiaries desire to exchange their Allowed Claims or Interests under the Plan for Beneficial Interests in the Creditors Trust.

## A G R E E M E N T S

**NOW THEREFORE**, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Haisfield Debtors and Haisfield Creditors Trustee hereby agree as follows:

## SECTION I. *DEFINITIONS*

**1.1 Terms Defined in Recitals**. As used in this Haisfield Creditors Trust Agreement, each of the terms "Haisfield Creditors Trust Agreement," "Debtors," "Haisfield Debtors," "Haisfield Creditors Trustee," "Bankruptcy Code," "Plan," "Bankruptcy Court," "Petition Date," and "Confirmation Order" shall have the meanings set forth in the Plan.

**1.2 Terms Defined in the Plan**. Capitalized terms used in this Haisfield Creditors Trust Agreement without definition shall have the meanings assigned to them in the Plan. Terms defined in the Bankruptcy Code and not otherwise specifically defined in the Plan or herein shall, when used herein, have the meanings attributed to them in the Bankruptcy Code.

**SECTION II.** ***AUTHORITY OF AND CERTAIN DIRECTIONS TO HAISFIELD CREDITORS TRUSTEE: DECLARATION OF TRUST***

**2.1 Creation of Creditors Trust**. Pursuant to Section 7.1 of Article 7 of the Plan and the Confirmation Order, and effective as of the Effective Date of the Plan, the Beneficiaries and the Haisfield Debtors hereby create the Creditors Trust, to be formally known as the "Haisfield Creditors Trust," for the benefit of the Beneficiaries. Pursuant to the terms of the Plan, the Haisfield Debtors execute this Haisfield Creditors Trust Agreement and irrevocably transfer, absolutely assign, convey, set over, and deliver to the Haisfield Creditors Trustee, and its successors and assigns, all right, title and interest of the Haisfield Debtors in and to the Remaining Assets, in trust, to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan, except as may otherwise be specifically provided by the Plan. The Haisfield Debtors shall execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Haisfield Creditors Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Remaining Assets to the Creditors Trust. All right, title and interest of the other Trust Assets, including without limitation all funds or properties distributed to the Haisfield Creditors Trust from the SWF Ocala Debtor's Estate pursuant to the Plan, also shall be irrevocably transferred, absolutely assigned, conveyed, set over, and delivered to the Haisfield Creditors Trustee, and its successors and assigns, in trust, to and for the benefit of the Beneficiaries pursuant to the terms of the Plan and/or the Settlement Agreement.

**2.2 Purpose of Creditors Trust**. This Creditors Trust is created and organized for the sole purposes of collecting, holding, liquidating, and distributing the Trust Assets and administering, compromising, settling, withdrawing, objecting to, or litigating the Litigation Claims as they pertain to the Haisfield Debtors and objections to the Claims under the Plan, with no objective to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust. In accordance with such express and limited purposes, as of the Effective Date, the Creditors Trust is hereby authorized and directed: (i) to take any and all steps necessary to maintain the Creditors Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation § 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the IRC unless otherwise required; (ii) to take all reasonable and necessary actions to conserve and protect the Trust Estate; (iii) to administer, compromise, settle, and litigate the Litigation Claims and any other claims or causes of action belonging to the Creditors Trust subject to the provisions of Section 4.12 hereof; (iv) to the extent necessary and appropriate, object to any Claims asserted against the Haisfield Debtors' Estate and the Creditors Trust; and (v) to maintain, operate or lease (for purposes of holding for sale), or sell or otherwise liquidate or dispose of the Trust Assets, in accordance with the terms of this Haisfield Creditors Trust Agreement, the Plan and the Confirmation Order, and to distribute the net proceeds of such disposition to the Beneficiaries, in as prompt, efficient and orderly a fashion as possible in accordance with the provisions of Section 5 hereof.

**2.3 Title to Litigation Claims of the Debtors**. Upon the transfer of the Litigation Claims and all other Remaining Assets of the Haisfield Debtors to the Creditors Trust, the Haisfield Creditors Trustee shall succeed to all of the Haisfield Debtors' right, title and interest in

the Litigation Claims and other Remaining Assets and the Haisfield Debtors will have no further interest in or with respect to the Litigation Claims, and other Remaining Assets, or the Creditors Trust.

**2.4 Tax Treatment of Transfer of the Remaining Assets to the Creditors Trust**. For all federal income tax purposes, all parties (including, without limitation, the Haisfield Debtors, the Haisfield Creditors Trustee, and the Beneficiaries) shall treat the transfer of the Remaining Assets to the Creditors Trust, as set forth in Sections 2.1 and 2.3 of this the Haisfield Creditors Trust Agreement and in accordance with the Plan, as a transfer of such Remaining Assets to the Beneficiaries and a transfer by the Beneficiaries of such Remaining Assets to the Creditors Trust. In all events, the Beneficiaries of the Creditors Trust shall be treated as the grantors and deemed owners of the Creditors Trust.

The Haisfield Creditors Trustee shall not be permitted to receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet distributions as provided herein and the Plan or to maintain the value of the Trust Assets during liquidation.

For the avoidance of any doubt, following the contribution of the Trust Assets pursuant to Article 7 of the Plan and Sections 2.1 and 2.3 hereof, the Haisfield Creditors Trustee shall have standing to pursue all Litigation Claims and to litigate and seek determination of, without limitation, all issues related to the Ocala Farm, the MDO Breeding Right, and the Progeny on behalf of the Creditors Trust, subject only to any limitations set forth in this Haisfield Creditors Trust Agreement or the Plan.

**2.5 Assignment and Assumption of Claims**. In accordance with Section 1141 of the Bankruptcy Code and Section 2.1 hereof, the Haisfield Debtors hereby transfer and assign the Remaining Assets to the Creditors Trust free and clear of any Liens, Claims, interests, encumbrances or any liability of any kind and the Haisfield Creditors Trustee on behalf of the Creditors Trust hereby assumes and agrees that all such Remaining Assets will be transferred to the Creditors Trust free and clear of any Liens, Claims, interests, encumbrances or any liability of any kind.

**2.6 Property in the Creditors Trust**. The Creditors Trust shall hold the legal title to all property at any time constituting a part of the Trust Estate and shall hold such property in trust to be administered and disposed of by it pursuant to the terms of this Haisfield Creditors Trust Agreement, the Plan, and the Confirmation Order for the benefit of the Beneficiaries. The Haisfield Creditors Trustee is authorized to make disbursements and payments from the Trust Estate in accordance with the provisions of Sections 5 and 6 of this Haisfield Creditors Trust Agreement and pursuant to the Plan.

**2.7 Valuation of Trust Assets**. As soon as possible after the Effective Date, and within the time frame required by applicable Treasury Regulations, the Haisfield Creditors Trustee, based upon his good faith determination after consultation with his counsel and other professionals, shall inform the Beneficiaries in writing solely as to his estimate of the value of the Trust Assets transferred to the Creditors Trust. The valuation shall be used consistently by all parties (including, without limitation, the Haisfield Debtors, the Haisfield Creditors Trustee, and the Beneficiaries) for federal income tax purposes; *provided, however*, that such valuation

shall not be binding on the Haisfield Creditors Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise.

**2.8 Continuation of the Automatic Stay**. In furtherance of the implementation of the Plan, except as otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all creditors and Beneficiaries holding claims against the Debtors, the Debtors' Estates, the Remaining Assets, the Haisfield Creditors Trustee, the Creditors Trust and the Trust Assets until the Final Distribution Date.

## SECTION III. *BENEFICIAL INTERESTS.*

**3.1 No Transfer or Exchange**. Unless the Haisfield Creditors Trustee determines otherwise, Beneficial Interests in the Creditors Trust shall not be transferable. In the event the Haisfield Creditors Trustee does authorize the transfer of Beneficial Interests, the Haisfield Creditors Trustee, with the advice and consent of counsel, shall establish procedures to govern the registration and transfer of Beneficial Interests ("Permitted Transfer"). Once such procedures have been established, if ever, the Haisfield Creditors Trustee shall notify all holders of Beneficial Interests of such procedures. Notwithstanding the foregoing, a transfer of a Beneficial Interest shall be not be permitted by the Haisfield Creditors Trustee if such transfer would be contrary to maintaining the Creditors Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation § 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the IRC.

**3.2 No Certification**. Unless the Haisfield Creditors Trustee determines otherwise, the Beneficial Interests will not be certificated and no security of any sort will be distributed to the Beneficiaries with respect to their interest in the Creditors Trust. In the event the Haisfield Creditors Trustee does permit the certification of the Beneficial Interests, the Haisfield Creditors Trustee, with the advice of counsel, shall establish procedures to govern such certification. Once such procedures have been established, if ever, the Haisfield Creditors Trustee shall notify all Beneficiaries of such procedures.

**3.3 Absolute Owners**. The Haisfield Creditors Trustee may deem and treat the persons who are Beneficiaries (as determined in accordance with the Plan) as the absolute owners of the Beneficial Interests in the Creditors Trust for the purpose of receiving distributions and payments thereof, or on account thereof, and for all other purposes whatsoever. Unless the Haisfield Creditors Trustee receives actual written notice of a Permitted Transfer from the duly authorized transferee not less than thirty (30) days prior to a distribution made pursuant to the terms of this Haisfield Creditors Trust Agreement, and subject to the applicable provisions of Bankruptcy Rule 3001(e), the Haisfield Creditors Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee of a Permitted Transfer.

**3.4 Means of Payment**. Cash payable to Beneficiaries pursuant to Section 5 hereto will be paid by checks drawn on a domestic bank account maintained by the Creditors Trust or

by wire transfer from a domestic bank account maintained by the Creditors Trust at the option of the Haisfield Creditors Trustee.

**3.5 Amount of Payment**. The amount of Cash payments and distributions to Beneficiaries shall be made and calculated in accordance with the Plan.

**3.6 Acceptance of Conveyance**. The Haisfield Creditors Trustee is hereby directed to, and the Haisfield Creditors Trustee agrees that he will: (a) accept delivery of the Trust Assets on behalf of the Creditors Trust; (b) accept all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Debtors or the Liquidating Agent with respect to the Trust Assets transferred to the Haisfield Creditors Trustee on behalf of the Creditors Trust pursuant to or in connection with the Plan, the Confirmation Order, or this Haisfield Creditors Trust Agreement; and (c) take such other action as may be required of the Creditors Trust hereunder, including the receipt and acceptance as part of the Trust Estate of any property or rights, including, without limitation, notes, other negotiable instruments, claims, Litigation Claims, and other choses-inaction belonging to the Debtors or their Estates.

**3.7 Title**. On the Effective Date, legal title to all Trust Assets shall be vested in the Creditors Trust in accordance with and pursuant to the terms of the Plan and this Haisfield Creditors Trust Agreement. Without limiting the foregoing, on the Effective Date, the Haisfield Creditors Trustee, on behalf of the Creditors Trust, shall be: (i) authorized to act as representative of the Haisfield Debtors' Estates in respect of any and all claims or causes of action that constitute Litigation Claims; and (ii) substituted as successor to the Trustee (a) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in regard to the Litigation Claims, (b) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in connection with or regarding all Claims, and (c) in any agreement respecting the Trust Assets to which the Haisfield Debtors are a party.

## SECTION IV. *ADMINISTRATION OF TRUST ESTATE.*

### 4.1 Claims Reserves.

a. The Haisfield Creditors Trustee shall establish a reserve fund (the “Disputed Claims Reserve”) for the payment by the Haisfield Creditors Trustee of all Disputed Claims. Each time a distribution is made to any Class of Claims, the Haisfield Creditors Trustee shall deposit into the Disputed Claims Reserve an amount equal to the distribution each holder of a Disputed Claim in such Class would have received were the Face Amount (as defined in Section 9.5 of the Plan) of its Disputed Claim in such Class been an Allowed Claim. At the time a Person’s Disputed Claim is allowed, in whole or in part, such Person shall receive from the Disputed Claims Reserve, a distribution equal to the distributions such Person would have received on account of its Allowed Claim had it been an Allowed Claim at the time of such prior distributions, with any surplus Cash held in the Disputed Claims Reserve on account of such Disputed Claim becoming generally available for use by the Haisfield Creditors Trustee. Such Person shall also become a new Beneficiary of the Creditors Trust and such Person shall be deemed, at such time, to have received a distribution of assets of the Trust Estate equal to the amount of the Allowed Claim immediately followed by a transfer by such Person to the

Creditors Trust of such assets and said new Beneficiary shall be treated, at such time, as a new grantor and deemed owner and Beneficiary of the Creditors Trust to the extent of his Allowed Claim.

**4.2 Administrative Powers of the Haisfield Creditors Trustee**. During the Haisfield Creditors Trustee's administration of the Creditors Trust, and subject to: (i) all the other provisions of this Haisfield Creditors Trust Agreement (including, but not limited to, Sections 4.3 and 4.4) and (ii) the Plan, the Haisfield Creditors Trustee may exercise the power:

(i) To receive and hold all the assets of the Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

(ii) To manage, sell and convert all or any portion of the assets in the Trust Estate to Cash and distribute the net distributable proceeds as specified in the Plan and this Haisfield Creditors Trust Agreement;

(iii) To enter into, perform and exercise rights under contracts binding upon the Creditors Trust (but not upon the Haisfield Creditors Trustee in his respective individual or corporate capacity) which are reasonably incident to the administration of the Creditors Trust and which the Haisfield Creditors Trustee, in the exercise of his best business judgment, reasonably believes to be in the best interests of the Creditors Trust;

(iv) To delegate his authority under this Creditors Trust to other persons, provided that such delegation must be made pursuant to a written agreement that has been approved by the Bankruptcy Court in conjunction with the confirmation of the Plan;

(v) To establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which Cash and property of the Creditors Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate as permitted or required under the Plan and this Haisfield Creditors Trust Agreement;

(vi) To employ attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons whose services may be reasonably necessary or advisable in the sole judgment of the Haisfield Creditors Trustee to advise or assist him in the discharge of his duties as Haisfield Creditors Trustee, or otherwise in the exercise of any powers vested in the Haisfield Creditors Trustee, and to pay reasonable compensation to such attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons;

(vii) Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, to sell or otherwise dispose of, and liquidate or convert to Cash, any assets of the Trust Estate, either subject to or free of any Lien, or distribute all or any part of the property of the Trust Estate among those having an interest in such property of the Trust Estate;

(viii) To pay any and all reasonable and necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Trust Estate;

(ix) To investigate, file, compromise, settle, withdraw or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims filed against the Haisfield Debtors' Estates, the Trust Estate or the Creditors Trust;

(x) To investigate, analyze, compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with and settle, in accordance with the terms set forth in this Haisfield Creditors Trust Agreement, all Litigation Claims and claims in favor of or against the Creditors Trust as the Haisfield Creditors Trustee shall deem advisable;

(xi) To avoid and recover transfers of the Haisfield Debtors' property as may be permitted by the Bankruptcy Code or applicable state law.

(xii) To take all appropriate action with respect to the Trust Estate, including, without limitation, the filing, prosecution, settlement or other resolution of claims and Litigation Claims;

(xiii) To sue or be sued in connection with any matter arising from or related to the Plan or this Haisfield Creditors Trust Agreement that affects in any way the rights or obligations of the Creditors Trust, the Haisfield Creditors Trustee or the Beneficiaries;

(xiv) To represent the interests of the Beneficiaries with respect to any matters relating to the Plan, this Haisfield Creditors Trust Agreement, or the Creditors Trust affecting the rights of such Beneficiaries;

(xv) If the Creditors Trust shall become subject to federal or state income tax, the Haisfield Creditors Trustee shall have the power, exercisable at his reasonable discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Beneficiaries resulting from any distribution made by the Creditors Trust to such Beneficiaries;

(xvi) In general, without in any manner limiting any of the foregoing or the following, to deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith; *provided, however*, that the investment powers of the Haisfield Creditors Trustee, other than those reasonably necessary to maintain the value of the Trust Assets of the Creditors Trust and to further the liquidating purpose of the Creditors Trust, are limited by the terms herein;

(xvii) To do any and all other things, not in violation of any other terms of the Plan, the Confirmation Order, and this Haisfield Creditors Trust Agreement, which, in the reasonable business judgment of the Haisfield Creditors Trustee, are necessary or appropriate for the proper liquidation, management, investment and distribution of the assets of the Trust Estate in accordance with the provisions of this Haisfield Creditors Trust Agreement and the Plan;

(xviii) To file final tax returns for the Haisfield Debtors, but only if necessary or appropriate; and

(xix) At the appropriate time, to request that the Bankruptcy Court enter a final decree closing the Haisfield Bankruptcy Case.

**4.3 Limitations on Haisfield Creditors Trustee; Investments**.

a. **No Trade or Business**. The Haisfield Creditors Trustee shall carry out the purposes of the Creditors Trust and the directions contained herein and shall not at any time cause the Creditors Trust to enter into or engage in any business (except as may be consistent with the limited purposes of the Creditors Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are reasonably necessary to carry out the purposes of the Haisfield Creditors Trust Agreement, on behalf of the Creditors Trust or the Beneficiaries). The Haisfield Creditors Trustee is directed to take all reasonable and necessary actions to dispose of the Trust Estate in as prompt, efficient and orderly a fashion as possible, to make timely distributions of the proceeds of the Trust Estate, and to otherwise not unduly prolong the duration of the Creditors Trust.

b. **Investments**. The Haisfield Creditors Trustee shall invest any monies held at any time as part of this Trust Estate, and every other reserve or escrow fund established pursuant to the terms of this Haisfield Creditors Trust Agreement, only in interest-bearing deposits or certificates of deposit issued by any federally insured banking institution or short-term investments, including short-term obligations of, or unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, pending the need for the disbursement thereof in payment of costs, expenses, and liabilities of the Creditors Trust or in making distributions pursuant to Section 5 of this Haisfield Creditors Trust Agreement. The Haisfield Creditors Trustee shall be restricted to the collection and holding of such monies and any income earned on such monies and to the payment and distribution thereof (at least annually if such monies are not necessary to maintain the value of the Trust Estate or to satisfy Claims against the Trust Estate) for the purposes set forth in the Plan and this Haisfield Creditors Trust Agreement, and to the conservation and protection of the Trust Estate in accordance with the provisions hereof.

**4.4 Limitations on Haisfield Creditors Trustee – Bankruptcy Court Approval of Settlements Required**.

a. Unless otherwise set forth herein, the Haisfield Creditors Trustee is authorized to compromise or settle an action without any advanced notice or consent if the Haisfield Creditors Trustee reasonably believes such settlement or compromise to be in the best interests of the Creditors Trust, and shall be held harmless by the Beneficiaries in taking such action.

b. Any compromise or settlement of an action by the Haisfield Creditors Trustee pursuant to this Section 4.4 shall be subject to approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

**4.5 Transferee Liabilities**. If any liability shall be asserted against the Creditors Trust as transferee of the Trust Assets on account of any claimed liability of or through the Debtors, the Haisfield Creditors Trustee may use such part of the Trust Assets as may be

necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms reasonably satisfactory to the Haisfield Creditors Trustee. In no event shall the Haisfield Creditors Trustee be required or obligated to use his own property, funds or assets for any such purposes.

**4.6 Administration of Trust**. In administering the Creditors Trust, the Haisfield Creditors Trustee, subject to the express limitations contained herein, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as he may deem reasonably necessary or advisable to carry out the purposes of the Creditors Trust.

**4.7 Payment of Expenses and Other Liabilities**. The Haisfield Creditors Trustee shall pay all reasonable expenses, charges, liabilities and obligations of the Creditors Trust, including without limiting the generality of the foregoing, such debts, liabilities, or obligations as may be payable from the Trust Estate, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Creditors Trust and the Trust Estate, and such other payments and disbursements as are provided for in this Haisfield Creditors Trust Agreement or which may be reasonably determined by the Haisfield Creditors Trustee to be proper charges against the Creditors Trust and the Trust Estate, and the Haisfield Creditors Trustee, in his reasonable discretion and business judgment may determine to be necessary or advisable to meet or satisfy unascertained, unliquidated or contingent liabilities of the Creditors Trust. The Haisfield Creditors Trustee shall make such payments without application to or order of the Bankruptcy Court, except as otherwise herein provided.

**4.8 Payment of U.S. Trustee's Fees**. After the occurrence of the Effective Date, fees payable to the Office of the United States Trustee during the administration of the Plan and until the case is converted, dismissed or closed, shall be paid by the Haisfield Creditors Trustee.

**4.9 Haisfield Creditors Trustee Fees**. The Haisfield Creditors Trustee is entitled to reasonable compensation for services performed pursuant to the terms of and in accordance with the terms of this Haisfield Creditors Trust Agreement. The Haisfield Creditors Trustee will be paid pursuant to Section 326 of the Bankruptcy Code.

**4.10 Fiscal Year**. The Creditors Trust's fiscal year shall end on December 31 of each year, unless the Haisfield Creditors Trustee deems it advisable to establish some other date on which the fiscal year of the Creditors Trust shall end.

**4.11 Reports**. The Haisfield Creditors Trustee shall:

a. Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Haisfield Creditors Trustee deems advisable during the fiscal year;

b. Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Beneficiaries and applicable taxing authorities, including, on an annual basis, the manner and calculation of the Creditors Trust's taxable gain or loss which the Creditors Trust would recognize if it were a

separate taxable entity. In this connection, the Haisfield Creditors Trustee shall file returns for the Creditors Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); and

c. As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Haisfield Creditors Trustee shall submit to the United States Trustee, and any Beneficiary who requests copies of such quarterly report after the Confirmation Date, an unaudited written report and account showing:

(i) the assets and liabilities of the Creditors Trust;

(ii) any distributions made and expenses paid pursuant to the Plan and the Haisfield Creditors Trust Agreement during that calendar quarter;

(iii) any changes in the Trust Assets that have not been previously reported; and,

(iv) any material action taken by the Haisfield Creditors Trustee in the performance of his or her duties under the Haisfield Creditors Trust Agreement that has not been previously reported.

## SECTION V. *PAYMENTS AND DISTRIBUTIONS.*

### 5.1 Distributions to Beneficiaries.

a. As often as in the reasonable discretion and judgment of the Haisfield Creditors Trustee there shall be Available Cash in an amount sufficient to render feasible a distribution of Cash to the Beneficiaries, the Haisfield Creditors Trustee shall transfer and pay, or cause to be transferred and paid, to the Beneficiaries (subject to the provisions of Section 3 hereof) such aggregate amount of Available Cash, if any, as shall then be held in the Creditors Trust, excluding reasonable amounts of Cash needed to pay the expenses, debts, charges, liabilities and obligations of the Creditors Trust (the "Distribution Amount"). The aggregate amounts required to be distributed to the Beneficiaries shall be determined by the Haisfield Creditors Trustee pursuant to and in accordance with the terms of the Plan and this Haisfield Creditors Trust Agreement. The Distribution Amount(s) shall be paid to the Beneficiaries at least annually so long as there are sufficient funds to make distributions and shall be determined by the Haisfield Creditors Trustee in his reasonable discretion and his determination shall be final and conclusive on all persons, in the absence of gross negligence or willful misconduct on the part of the Haisfield Creditors Trustee, and shall not be reviewed by the Bankruptcy Court. In determining the amount of any such distribution, the Creditors Trust may rely and shall be fully protected in relying upon the advice and opinion of independent public accountants or of counsel to the Creditors Trust.

b. All payments to be made hereunder to the Beneficiaries shall be made only from the Available Cash, and income and proceeds thereof, and only to the extent that the Haisfield Creditors Trustee shall have received sufficient Available Cash, income or proceeds thereof to make such payments in accordance with the terms of this Section 5. Each Beneficiary shall look solely to the assets, income and proceeds of the Creditors Trust available for distribution to such Beneficiary as herein provided.

**5.2 Establishment of the Claim Accounts**. The Haisfield Creditors Trustee will establish on the Creditors Trust's books and records an account representing each Allowed or Disputed Claim as set forth on the official claims register maintained by the Clerk of the Bankruptcy Court (each, a "Claim Account"). It is expressly understood that the establishment of the Claim Accounts by the Haisfield Creditors Trustee or his agents is solely for administrative convenience, and that amounts allocable to such Claim Accounts need not be segregated and may be commingled for investment purposes as specified herein. The Haisfield Creditors Trustee may rely on the official claims register as correct.

**5.3 Distributions from Trust Estate**. Distributions will be made to the Beneficiaries in accordance with the terms of the Plan and the Claim Accounts will be adjusted by the Haisfield Creditors Trustee to reflect such distributions.

**5.4 Fractional Distributions**. No distribution in fractions of cents shall be issued. If the Distribution Amount allocated to an Allowed Claim or Interest at the time of a distribution hereunder would include fractions of cents, the amount to be distributed shall be rounded down to the highest integral number of cents in the applicable Claim Account, but such rounding down shall not affect such allocation. The aggregate amount of the retained fractional distributions from the Distribution Amount shall be retained in the Creditors Trust by the Haisfield Creditors Trustee and shall remain part of the Trust Estate.

**5.5 Final Distribution**. Upon the final collection or liquidation of all of the assets, rights and interests comprising the Trust Estate, and in any event prior to the Termination Date (as defined in Section 5.6 hereof), the Haisfield Creditors Trustee shall prepare a final accounting of any and all monies remaining in any accounts maintained by the Haisfield Creditors Trustee on behalf of the Creditors Trust (the "Final Cash"). Once the amount of the Final Cash has been determined, the Haisfield Creditors Trustee shall make the Final Distribution, in accordance with the Plan and this Haisfield Creditors Trust Agreement.

**5.6 Termination Date**. The Creditors Trust shall terminate on such date that: (a) a final decree has been entered closing the Haisfield Bankruptcy Case and (b) all assets in the Trust Estate have been distributed and (c) all Litigation Claims have been pursued or abandoned pursuant to, and in accordance with, the Plan and this Haisfield Creditors Trust Agreement (the "Termination Date"). However, the term of the Creditors Trust shall not exceed five (5) years from the Effective Date, provided that, upon a finding that an extension is necessary to the liquidating purpose of the Creditors Trust and upon approval by the Bankruptcy Court, the term may be extended for a finite term based on the particular facts and circumstances. Each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. The Haisfield Creditors Trustee shall be released of all liabilities and discharged from his or her obligations under the Plan or this Haisfield Creditors Trust Agreement once the Creditors Trust has terminated.

## SECTION VI. *OTHER DUTIES OF THE HAISFIELD CREDITORS TRUSTEE.*

**6.1 Management of Trust Estate**. With respect to the assets of the Trust Estate, the Haisfield Creditors Trustee may purchase and maintain in existence such insurance as the Haisfield Creditors Trustee deems reasonable and necessary or appropriate from time to time to

protect the Creditors Trust, the Trust Assets, the Haisfield Creditors Trustee, and the Beneficiaries' interests in the assets of the Trust Estate or from any potential claims or liabilities relating thereto or the distribution thereof.

**6.2 Tax and Related Matters**. Pursuant to and in accordance with the Plan, the Haisfield Creditors Trustee shall be responsible for all tax matters of the Trust Estate, including, but not limited to, the filing of all tax returns and other filings with governmental authorities on behalf of the Trust Estate for time periods ending on or before the Final Tax Day, including the filing of tax returns for the Creditors Trust as a grantor trust pursuant to § 1.671-4(a) of the United States Income Tax Regulations, the filing of determination requests under Section 505(b) of the Bankruptcy Code, and responding to any tax audits of the Trust Estate. The Haisfield Creditors Trustee shall provide such information to the Beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law. The Haisfield Creditors Trustee is authorized to act as agent for the Trust Estate in withholding or paying over any amounts required by law (including tax law) to be withheld or paid with respect to the Trust Estate. The Creditors Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay the federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto. The Haisfield Creditors Trustee shall be entitled to deduct any federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code.

**6.3 No Implied Duties**. The Haisfield Creditors Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder except as expressly provided herein, and no implied duties or obligations whatsoever of the Haisfield Creditors Trustee shall be read into this Haisfield Creditors Trust Agreement.

**SECTION VII. *CONCERNING THE HAISFIELD CREDITORS TRUSTEE.***

**7.1 Acceptance by Haisfield Creditors Trustee**. The Haisfield Creditors Trustee accepts the Creditors Trust hereby created for the benefit of the Beneficiaries and agrees to act as Haisfield Creditors Trustee of the Creditors Trust pursuant to the terms of this Haisfield Creditors Trust Agreement and the Plan. The Haisfield Creditors Trustee shall have and exercise the rights and powers herein granted and shall be charged solely with the performance of the duties herein declared on the part of Haisfield Creditors Trustee. The Haisfield Creditors Trustee also agrees to receive and disburse all monies actually received by him constituting part of the Trust Estate pursuant to the terms of this Haisfield Creditors Trust Agreement and the Plan.

**7.2 Discretionary Submission of Questions**. Subject to the provisions of this Section 7, the Haisfield Creditors Trustee, in his sole discretion and reasonable business judgment, may, but shall not be required to, submit to the Bankruptcy Court, from time to time, any question or questions with respect to which the Haisfield Creditors Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Haisfield Creditors Trustee with respect to the Trust Estate, or any part thereof, and the administration and distribution of the Trust Estate. The written authorization of the Bankruptcy Court set forth in a Final Order shall constitute approval by the Bankruptcy Court of

the proposed action to be taken by the Haisfield Creditors Trustee. All costs and expenses incurred by the Creditors Trust in the exercise of any right, power, authority conferred by this Section 7.2 shall be costs and reasonable expenses of the Trust Estate.

**7.3 Liability of the Haisfield Creditors Trustee**.

a. **Limitation on Liability**. No provision of this Haisfield Creditors Trust Agreement shall be construed to impart any liability upon the Haisfield Creditors Trustee unless it shall be proven that the Haisfield Creditors Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right or power vested in the Haisfield Creditors Trustee under this Haisfield Creditors Trust Agreement.

b. **Reliance on Certificates or Opinions**. In the absence of gross negligence or willful misconduct on the part of the Haisfield Creditors Trustee, the Creditors Trust may conclusively rely on the truth of the statements and correctness of the opinions expressed upon any certificates or opinions furnished to the Haisfield Creditors Trustee and conforming to the requirements of this Haisfield Creditors Trust Agreement.

c. **Discretion of Haisfield Creditors Trustee**. The Haisfield Creditors Trustee, within the limitations and restrictions expressed and imposed by this Haisfield Creditors Trust Agreement, may act freely under all or any of the rights, powers and authority conferred hereby, in all matters concerning the Trust Estate, after forming his best reasonable business judgment based upon the circumstances of any particular question or situation as to the best course to pursue, without the necessity of obtaining the consent or permission or authorization of the Beneficiaries, the Bankruptcy Court, or of any official or officer; and the rights, powers and authority conferred on the Haisfield Creditors Trustee by this Haisfield Creditors Trust Agreement are conferred in contemplation of such freedom of reasonable business judgment and action within the limitations and restrictions so expressed and imposed; *provided, however*, that the Haisfield Creditors Trustee shall not be liable for any error or exercise of judgment, unless it shall be proved that such Haisfield Creditors Trustee was grossly negligent or acted in a manner which constituted willful misconduct.

**7.4 Reliance by Haisfield Creditors Trustee**.

a. **Genuineness of Documents**. The Haisfield Creditors Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by him to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

b. **Retention of Counsel**. The Haisfield Creditors Trustee may retain and consult with legal counsel, independent public accountants and other experts. The Haisfield Creditors Trustee shall not be liable for any action taken or suffered by him or omitted to be taken by him without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or in accordance with the advice of such counsel or experts, provided that such accountants, counsel and experts were selected and retained with reasonable care.

**7.5 Reliance on Haisfield Creditors Trustee**. No person dealing with the Haisfield Creditors Trustee shall be obligated to see to the application of any monies, securities, or other property paid or delivered to them or to inquire into the expediency or propriety of any transaction or the right, power, or authority of the Haisfield Creditors Trustee to enter into or consummate the same upon such terms as the Haisfield Creditors Trustee may deem advisable. Persons dealing with the Haisfield Creditors Trustee shall look only to the Trust Estate to satisfy any liability incurred by the Haisfield Creditors Trustee to such persons in carrying out the terms of this Haisfield Creditors Trust Agreement, and, except as otherwise expressly provided herein, the Haisfield Creditors Trustee shall have no personal, individual or corporate obligation to satisfy any such liability.

**7.6 Indemnification**.

a. **Indemnification of Haisfield Creditors Trustee and Agents**. The Haisfield Creditors Trustee hereby agrees that the Creditors Trust will indemnify to the full extent of the Trust Estate any person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative by reason of the fact that such person or entity is or was a Haisfield Creditors Trustee or an employee, attorney or agent of the Creditors Trust or Haisfield Creditors Trustee, from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person or entity in connection with such action, suit or proceeding, including appeals thereof, if such person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such person or entity in accordance with this Haisfield Creditors Trust Agreement.

b. **Payment of Expenses**. Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to in this Section 7.6 may be paid by the Creditors Trust from the Trust Assets in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Haisfield Creditors Trustee or an employee or agent of the Creditors Trust entitled to be indemnified.

c. **Insurance**. The Creditors Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Haisfield Creditors Trustee, and each of their officers, employees or agents of and from any liability, whether or not the Creditors Trust would have the legal power to directly indemnify the Haisfield Creditors Trustee and each of its officers, employees, or agents against such liability. The terms "Haisfield Creditors Trustee," "employer" or "agent" as used herein, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

d. **Bond**. There shall be no requirement for the posting of a bond as a condition to serving as Haisfield Creditors Trustee hereunder.

e. **Costs and Expenses of Haisfield Creditors Trustee**. Except as set forth in subsection c, the Haisfield Creditors Trustee shall pay out of the Trust Assets, on a monthly basis and without notice or application to the Bankruptcy Court, all reasonable costs, expenses

and obligations incurred by the Haisfield Creditors Trustee in carrying out his duties under the Haisfield Creditors Trust Agreement or in any manner connected, incidental or related to the administration of the Creditors Trust, including, without limitation:

(i) Any reasonable, documented fees and out-of-pocket expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjusters, professionals or other persons whom the Haisfield Creditors Trustee may reasonably deem advisable to employ in connection with the Creditors Trust in accordance with the terms of this Haisfield Creditors Trust Agreement; and

(ii) Any taxes, charges and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust pursuant to this Haisfield Creditors Trust Agreement.

**7.7 Resignation and Removal**.

a. **Resignation**. The Haisfield Creditors Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.

b. **Removal**. The Haisfield Creditors Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest, pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Upon any such removal, such removed Haisfield Creditors Trustee shall be entitled to any reimbursement and indemnification set forth in this Haisfield Creditors Trust Agreement which remain due and owing to such Haisfield Creditors Trustee at the time of such removal.

c. **Appointment of a Successor Haisfield Creditors Trustee**. If, at any time, the Haisfield Creditors Trustee shall give notice of his intent to resign pursuant to Section 7.7 hereof or be removed or shall become incapable of acting, counsel to the Haisfield Creditors Trustee shall provide notice thereof to the Bankruptcy Court. The United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor Haisfield Creditors Trustee to act under this Haisfield Creditors Trust Agreement.

d. **Acceptance of Appointment by Successor Haisfield Creditors Trustee**. Any successor Haisfield Creditors Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver counterparts thereof to the Bankruptcy Court. Thereupon, such successor Haisfield Creditors Trustee shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of his predecessor in the Creditors Trust hereunder with like effect as if originally named herein.

e. **Trust Continuance**. The death, resignation, incompetency or removal of the Haisfield Creditors Trustee shall operate neither to terminate the Creditors Trust created by this Haisfield Creditors Trust Agreement nor to revoke any existing agency created pursuant to the terms of this Haisfield Creditors Trust Agreement or invalidate in any action theretofore taken by such Haisfield Creditors Trustee. In the event of the resignation or removal of the Haisfield Creditors Trustee, such Haisfield Creditors Trustee shall (i) promptly execute and

deliver any such documents, instruments, and other writing as maybe necessary to effect the termination of such Haisfield Creditors Trustee's capacity under this Haisfield Creditors Trust Agreement and the conveyance of the Trust Estate then held by such Haisfield Creditors Trustee to the temporary or successor trustee; (ii) deliver to the temporary or successor trustee all documents, instruments, records, and other writings relating to the Creditors Trust or Trust Estate as may be in the possession of such Haisfield Creditors Trustee; and (iii) otherwise assist and cooperate in effecting the transfer and assumption of his obligations and functions by the temporary or successor trustee.

## SECTION VIII. *SUPPLEMENTS AND AMENDMENTS TO THIS LIQUIDATING TRUST AGREEMENT.*

**8.1 Supplements and Amendments**. Subject to the provisions of Sections 2, 8.2, and 8.3 hereof, at any time and from time to time, and subject to approval by the Bankruptcy Court if sought by the Haisfield Creditors Trustee pursuant to Section 7.2 of this Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Haisfield Creditors Trust Agreement, or amendments thereto; *provided, however*, that no such supplement or amendment shall (i) require any Beneficiary to furnish or advance funds to the Haisfield Creditors Trustee or shall entail any additional personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary, or (ii) without the consent of those Beneficiaries holding not less than seventy-five percent (in aggregate dollar amount) of the Beneficial Interests, change or modify any other provisions for distribution of the Trust Estate. In no event shall this Haisfield Creditors Trust Agreement be amended so as to change the purposes of the Creditors Trust as set forth in Section 2 or the treatment of Claims under the Plan and this Haisfield Creditors Trust Agreement.

**8.2 Haisfield Creditors Trustee, Declining to Execute Documents**. If, in the reasonable opinion of the Haisfield Creditors Trustee, any document required to be executed pursuant to Section 8.1 hereof materially and adversely affects any immunity or indemnity in favor of the Haisfield Creditors Trustee under this Haisfield Creditors Trust Agreement, the Haisfield Creditors Trustee may in his discretion decline to execute such document.

**8.3 Notice of Form of Supplement and Amendments Requiring Vote or Consent**. A copy of each amendment or supplement (or a fair summary thereof) shall be furnished to the Beneficiaries, promptly after the execution thereof, except that with respect to any proposed amendment or supplement for which the consent of the Beneficiaries is required, the form of such proposed supplement or amendment (or a fair summary thereof) shall be furnished to the applicable Beneficiaries prior to the Haisfield Creditors Trustee seeking the approval thereof by vote or consent of such necessary parties.

**8.4 Notice and Effect of Executed Amendment**. Upon the execution of any declaration of amendment or supplement, this Haisfield Creditors Trust Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Haisfield Creditors Trust Agreement of the Haisfield Creditors Trustee and the Beneficiaries shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and

amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Haisfield Creditors Trust Agreement for any and all purposes.

**SECTION IX.** ***MISCELLANEOUS.***

**9.1 Title to Trust Estate**. No Beneficiary or any other party other than the Creditors Trust shall have title to any part of the Trust Estate.

**9.2 Sales of Assets of the Trust Estate**. Any sale or other conveyance of any Assets of the Trust Estate, or part thereof, by the Haisfield Creditors Trustee made in accordance with the terms of this Haisfield Creditors Trust Agreement shall bind the Beneficiaries and shall be effective to transfer or convey all right, title and interest of the Haisfield Creditors Trustee and the Beneficiaries in and to such asset of the Trust Estate.

**9.3 Notices**. Unless otherwise expressly specified or permitted by the terms of the Plan or this Haisfield Creditors Trust Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or facsimile transmission (and confirmed by mail), in any such case addressed as follows:

**<u>If to the Haisfield Creditors Trustee</u>**:

___________, as Haisfield Creditors Trustee
c/o John B. Macdonald, Esq.
Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202

and

**<u>If to any Beneficiary</u>**:

addressed to its latest mailing address reflected on the Claims List.

**9.4 Severability**. Any provision of this Haisfield Creditors Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**9.5 Counterparts**. This Haisfield Creditors Trust Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

**9.6 Binding Agreement**. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Haisfield Creditors Trustee and his respective successors and assigns and any successor Haisfield Creditors Trustee provided for in Section 7, his respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Beneficiary shall bind their respective heirs, personal representatives, successors and assigns.

**9.7 No Personal Liability of Beneficiaries**. The Beneficiaries will not incur any personal liability through their ownership or possession of their Beneficial Interests, except for taxes imposed on the Beneficiaries pursuant to applicable provisions of federal, state or local law with respect to the receipt of such Beneficial Interests or distributions from or transactions of the Creditors Trust and other charges specified herein. Liabilities of the Creditors Trust are to be satisfied in all events (including the exhaustion of the Trust Estate) exclusively from the Trust Estate and such liabilities are not to attach to or be paid from any amounts distributed to the Beneficiaries, regardless of the time at which such distribution took place, or from the assets of the Beneficiaries.

**9.8 Headings**. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

**9.9 Construction**. Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

**9.10 Governing Law**. This Haisfield Creditors Trust Agreement, including all matters of construction, validity and performance hereof, shall in all respects be governed by, and construed and interpreted in accordance with the internal laws of the State of Florida.

**9.11 Construction with the Plan**. The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. In the event of any inconsistency or conflict between the terms, conditions, definitions and provisions of this Haisfield Creditors Trust Agreement and the terms, conditions and provisions of the Plan, the terms, conditions, definitions and provisions of the Plan shall control.

**9.12 Subject to Bankruptcy Court's Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Creditors Trust, the Trust Estate, the Haisfield Creditors Trustee and the Haisfield Debtors to issue any and all orders and to take other actions necessary to the implementation and enforcement of this Haisfield Creditors Trust Agreement, such jurisdiction to include, without limitation, the jurisdiction contemplated by Section 1142 of the Bankruptcy Code.

**9.13 Intention of the Parties**. The Haisfield Debtors, the Beneficiaries and the Haisfield Creditors Trustee hereby express their intent to create and maintain the Creditors Trust as a liquidating trust for Federal income tax purposes in accordance with Treasury Regulation §301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of

the IRC, and the Haisfield Creditors Trustee further represents that the Creditors Trust shall not: (a) receive transfers of listed stocks or securities, any readily-marketable assets (other than those constituting the Trust Estate), or any assets of a going business; or (b) receive and will not retain Cash in excess of a reasonable amount to meet claims and contingent liabilities, determined in the reasonable discretion of the Haisfield Creditors Trustee in accordance with the provisions of Section 4 and 5 hereof.

**IN WITNESS WHEREOF**, the parties have executed and have hereunto caused this Haisfield Creditors Trust Agreement to be duly executed, as of the day and year first written above.

**Haisfield Creditors Trustee of the Haisfield Creditors Trust**

By: ________________________________
Name: _________________
Title: Haisfield Creditors Trustee

**Richard Haisfield**

____________________________________

**Audrey L. Haisfield**

____________________________________

**Exhibit "B"**

**List of Executory Contracts and Unexpired Leases to be Assumed**

1. That certain Purchase and Sale Agreement, entered into on May 27, 2009, by and between (i) Medaglia I, LLC, and Palm Beach Stallions I, LLLP, (ii) Darley Stud Management, LLC, and (iii) Stone*Wall Stallions Management Group, LLC, under which Richard and Audrey are provided rights.

**Exhibit "C"**

**Retained Assets**

<u>Assets Retained for the Debtors' Horse Breeding Operations:</u>

1. Horses

| | |
|---|---|
| (a) Three Stallions: | Burning Roma<br>Doneraile Court<br>Greatness |
| (b) Three Broodmares: | Bold Maiden<br>Duty With Pay<br>Unbridled Tale<br><br>(all are owned by SWF Ocala of which Richard Haisfield owns 75% ) |
| (c) Two Broodmares: | La Mona Lisa<br>Whitepark Bay<br><br>(both are owned by The Big Mares, LLC, which is owned 50% by Audrey Haisfield and 50% by Ed Seltzer) |
| (d) Two Yearlings: | '16 Filly out of Bold Maiden by Black Onyx<br>'16 Colt out of Chelsies' Way by Telling |
| (e) Three Two Year Olds: | '15 Filly out of Bold Maiden by Telling – Spirited Tale<br>'15 Colt out of Duty With Pay by DaStoops – Double Pay<br>'15 Filly out of Unbridled Tale by Causeway's Kin |
| (f) One Two Year Old: | '15 Filly out of La Mona Lisa – LaTell<br><br>(Owned by The Big Mares, LLC, which is owned 50% by Audrey Haisfield and 50% by Ed Seltzer) |
| (g) One Two Year Old: | '15 Colt out of Suborbital by Kibbutznik – Foal Share – Sir Stonewall |
| (h) Three Three Year Olds | '14 Filly out of Bold Maiden by Leroidesanimaux – Animal Lady<br>'14 Filly out of Unbridled Tale by Telling – Tale Is Told<br>'14 filly out of Very by General Quarters – Airspeed Alive |
| (i) Two Three Year Olds: | '14 Colt out of Whitepark Bay –Shades Of Night<br>'14 Filly out of La Mona Lisa - Monadesanimaux<br><br>(Both owned by The Big Mares, LLC, which is owned 50% by Audrey Haisfield and 50% by Ed Seltzer) |
| (j) One Four Year Old: | '13 Filly out of La Mona Lisa |

(Owned by The Big Mares, LLC, which is owned 50% by Audrey Haisfield and 50% by Ed Seltzer)

(k) One Four Year Old: Baby Magic out of Magical Contender

2. Tractor, manure spreader, bush hog, three (3) golf carts, and general farm equipment - hoses, buckets halters.

3. Any interest of Richard, Audrey, or any entity in which they have, separately or together, an ownership interest, whether direct or indirect (including, without limitation, Stonewall's Prestige Stallions, LLC), in the stallion known as Big Drama, whether under a stallion management agreement or otherwise.

**Exhibit "D"**

**Personal Property**

1. Audrey Haisfield's Life Estate in Audrey's mother's former house (50-year old brick house/1,200 sq. ft. in NC) - Life Estate interest only.

2. Car - subject to lien.

3. Personal furniture and clothing, as per the Debtors' bankruptcy schedules and the appraisal attached thereto.

4. ATTO Mile Trophy - Leroidesanimaux (BRZ) won at Woodbine.

5. The Whitney Trophy and Woodford Racing Trophy - Lawyer Ron won at Saratoga.

6. Personal jewelry, as per the Debtors' bankruptcy schedules.

Exhibit "E"

**Haisfield Debtors' Exempt Assets**

The Haisfield Debtors' claimed exempt property in the amount of $8,000, as provided on their Amended Schedule C filed in the Haisfield Debtors' Chapter 11 Case (Doc. 46 at 18).